# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-3019(E)

FREDDIE BUTTS, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Argued September 22, 2015                    Decided June 3, 2016)

*Zachary M. Stolz* of Providence, Rhode Island, with whom *Robert V. Chisholm*, of Providence, Rhode Island, was on the pleading for the appellant.

*Brent Bowker*, Appellate Attorney, of Washington, D.C., with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Kenneth A. Walsh*, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleading for the appellee.

Before HAGEL, *Chief Judge*, and KASOLD, LANCE, DAVIS, SCHOELEN, PIETSCH, BARTLEY, GREENBERG, and MOORMAN,[1] *Judges*.

DAVIS, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed an opinion concurring in part and dissenting in part. LANCE, *Judge*, filed a dissenting opinion in which MOORMAN, *Judge*, joined. BARTLEY, *Judge*, filed a dissenting opinion in which LANCE, PIETSCH, and MOORMAN, *Judges*, joined. MOORMAN, *Judge*, filed a dissenting opinion.

DAVIS, *Judge*: Veteran Freddie Butts applies through counsel for an award of attorney fees and expenses in the amount of $3,030.02 pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). The Court has jurisdiction pursuant to 28 U.S.C. § 2412(d)(2)(F) to award reasonable attorney fees and expenses. Mr. Butts filed his EAJA application within the 30-day period set forth in 28 U.S.C. § 2412(d)(1)(B), and his application satisfies that section's content

---

[1] Judge Moorman is a recall-eligible judge who has been recalled to further service by the Chief Judge. 38 U.S.C. § 7257(b)(1); U.S. VET. APP. MISC. NOS. 12-15 (Sept. 1, 2015), 02-16 (Feb. 1, 2016).

requirements. *See Scarborough v. Principi*, 541 U.S. 401, 408 (2004). The Secretary filed a response challenging the EAJA application in which he argued both that Mr. Butts is not a prevailing party and that the Secretary's position in the merits case was substantially justified. Mr. Butts filed a reply to the Secretary's response. On July 29, 2015, this case was submitted to the en banc Court pursuant to title VII(b)(2)(A) of the Court's Internal Operating Procedures. *Butts v. McDonald*, U.S. Vet. App. No. 14-3019 (unpublished order July 29, 2015). On September 22, 2015, the en banc Court held oral argument. For the following reasons, the Court will grant in part Mr. Butts's EAJA application.

## I. BACKGROUND

In cases that present an "exceptional or unusual" disability picture, 38 C.F.R. § 3.321(b)(1) authorizes the Under Secretary for Benefits or the Director of VA's Compensation Service to approve extraschedular evaluations "commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." In March 2013, the Court issued an en banc opinion in *Johnson v. Shinseki* to address whether § 3.321(b)(1) requires VA to consider a veteran's collective, rather than individual, disabilities. *Johnson v. Shinseki* (*Johnson I*), 26 Vet.App. 237 (2013) (en banc), *rev'd sub nom. Johnson v. McDonald* (*Johnson II*), 762 F.3d 1362 (Fed. Cir. 2014). A five-judge majority in *Johnson I* determined that the language of § 3.321(b)(1) was ambiguous and thus deferred to the Secretary's interpretation of the regulation as limiting extraschedular consideration to disabilities on an individual basis. *Id.* Mr. Johnson appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in June 2013. In July 2014, while *Johnson I* was on appeal, the Board of Veterans' Appeals (Board) issued a decision in Mr. Butts's case that denied referral for extraschedular consideration for various service-connected disabilities.

In August 2014, the Federal Circuit issued *Johnson II*, reversing *Johnson I*. The Federal Circuit concluded that the "plain language of § 3.321(b)(1) is unambiguous" and "provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities." *Johnson II*, 762 F.3d at 1365-66 (also noting that there exists "no policy justification for interpreting § 3.321(b)(1) in the way that the government advocates"). In September 2014, following *Johnson II*, Mr. Butts filed a Notice of Appeal from the Board's July 2014 decision. On March 9, 2015, the parties filed a joint motion for partial remand (JMPR). The JMPR stated that the "[t]he parties agree

that vacatur and remand are warranted because the Board's decision finding that referral for an extraschedular rating for the service-connected disabilities on appeal [is not warranted] does not comply with the requirements of 38 C.F.R. § 3.321 (2014)." JMPR at 2. The JMPR cited *Johnson II* and noted that the Board's July 2014 decision failed to consider Mr. Butts's disabilities on a collective basis. The Court granted the JMPR on March 12, 2015, and remanded the matter to the Board. Mr. Butts's EAJA application followed.

## II. THE PARTIES' ARGUMENTS

In his EAJA application, Mr. Butts asserts both that he is a prevailing party and that the Secretary's position on the merits was not substantially justified. Appellant's Application for Attorney Fees and Expenses (Appl.) at 2-4. The Secretary responds that Mr. Butts is not a prevailing party because the JMPR was based on a change in precedent, rather than Board error. Secretary's Response (Resp.) to Appl. at 4. The Secretary also argues that he was substantially justified at both the administrative and litigation stages of Mr. Butts's case. At the administrative stage, the Secretary contends, the Board was substantially justified because its decision was consistent with *Johnson I*, which was then-current law upholding the Secretary's interpretation of § 3.321(b)(1). *Id.* at 9-13. He also argues that this Court's en banc decision in *Johnson I* demonstrates that reasonable minds could disagree with the Federal Circuit's determination that the plain meaning of § 3.321(b)(1) requires the Secretary to consider disabilities collectively. Secretary's Resp. to Court's Aug. 20, 2015, Order at 10-11. Additionally, the Secretary asserts that his interpretation of § 3.321(b)(1) at the administrative stage was reasonable in light of the scheme of the rating schedule, which assigns schedular ratings on a disability-by-disability basis. *See id.* at 11. At the litigation stage, the Secretary asserts, he "'cooperated in speedily resolving the litigation'" by promptly entering into a JMPR based on *Johnson II*. Secretary's Resp. to Appl. at 13 (quoting *Essex Electro Eng'rs, Inc. v. United States*, 757 F.2d 247, 253 (Fed. Cir. 1985)).

In reply, Mr. Butts argues that he is a prevailing party because the JMPR was implicitly based on the Board's failure to properly apply § 3.321(b)(1), as *Johnson II* "did not create a new interpretation of the regulation, but simply explained what the regulation has always said." Appellant's Reply to Secretary's Resp. at 1-2, 5. Mr. Butts also alleges that the Secretary was not

substantially justified at the administrative stage because the Secretary's position was "wholly unsupported by the plain language" of § 3.321(b)(1), which "contained the same language [then] as it does now," requiring the Board to consider his collective disability picture. *Id.* at 8-10. He does not challenge the Secretary's substantial justification at the litigation stage. *See id.* at 8, 11.

### III.  ANALYSIS

#### A. Applicable Law

By authorizing attorney fees and expenses to parties who prevail in civil litigation against the Government, EAJA "ensure[s] that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved" in vindicating their rights.[2] *Scarborough*, 541 U.S. at 407 (internal citations omitted); *see Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions."). EAJA is particularly important in the pro-claimant veterans benefits system, as it aids veterans who choose to appeal VA decisions erroneously denying them benefits they have earned. *Kelly v. Nicholson*, 463 F.3d 1349, 1353 (Fed. Cir. 2006).

The Court may award EAJA fees when the applicant is a prevailing party and the Secretary's position was not substantially justified. 28 U.S.C. § 2412(d)(1)(A)-(B); *Scarborough*, 541 U.S. at 407-08. "The appellant has the burden of demonstrating prevailing-party status under the EAJA." *Rollins v. Principi*, 17 Vet.App. 294, 298 (2003). Prevailing-party status is established through either "a merits-stage remand predicated upon the Court's finding of error or a concession of error by the Secretary." *Vahey v. Nicholson*, 20 Vet.App. 208, 211 (2006). A joint motion for remand (JMR) may confer prevailing-party status if the JMR contains an explicit or implicit admission of error. *Thompson v. Shinseki*, 24 Vet.App. 176, 178 (2010). In determining whether a JMR contains an

---

[2] As a Senate report explained, Congress enacted the EAJA because

> [f]or many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. . . . When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

S. REP. NO. 96-253, at 5 (1979).

admission of error, the Court "must look to the words of the motion." *Briddell v. Principi*, 16 Vet.App. 267, 272 (2002) (emphasis omitted).

In contrast, the Secretary bears the burden of demonstrating that his position was substantially justified at both the administrative and litigation stages. *Locher v. Brown*, 9 Vet.App. 535, 537 (1996); *see Stillwell v. Brown*, 6 Vet.App. 291, 302 (1994) ("[T]he entirety of the conduct of the government is to be analyzed, both the government's litigation position and the action or inaction by the agency prior to the litigation."). Regarding the administrative stage, the Court evaluates "the reasonableness of 'the underlying government action at issue.'" *Felton v. Brown*, 7 Vet.App. 276, 280 (1994) (quoting *Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 388 (9th Cir. 1993)). Regarding the litigation stage, the Court "looks to the circumstances surrounding the resolution of the dispute." *Coleman v. Nicholson*, 21 Vet.App. 386, 389 (2007).

"Substantially justified" means "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Thus, even an incorrect position can be justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n.2; *see Stillwell*, 6 Vet.App. at 302. In determining the reasonableness of the Secretary's position, the Court must analyze the "'totality of the circumstances' surrounding the government's adoption of a particular position." *Patrick v. Shinseki*, 668 F.3d 1325, 1332 (Fed. Cir. 2011). Such factors include "merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act," along with any other applicable circumstances.[3] *Stillwell*, 6 Vet.App. at 302; *see Cline v. Shinseki*, 26 Vet.App. 325, 327 (2013). No

---

[3] Our dissenting colleagues' major criticism of our decision is embodied in the statement that the majority gives "lip service" to the totality of the circumstances but improperly focuses "on only one factor"–the Federal Circuit's opinion in *Johnson II*. *Post* at 22 (Bartley, J., dissenting). Our dissenting colleagues contend that this "unfortunate fixation" has led the majority to either "ignore" or "miss" other factors. *Post* at 28 (Bartley, J., dissenting). Contrary to this assertion, we have considered relevant factors, and particularly those factors argued by the Secretary. Our dissenting colleagues, however, go to great lengths in an exhaustive opinion to present their own justification for the Secretary's position, even though this Court has observed that "the function of any federal court does not include . . . research for the government's side of a case" because "it is unthinkable that the Court fill the role of the Secretary while resolving the appeals before it." *MacWhorter v. Derwinski*, 2 Vet.App. 133, 135-36 (1992). Indeed, although the Secretary made his argument for substantial justification in two pleadings that consist of nine pages, our dissenting colleagues have produced a 24-page opinion contending that the Secretary was substantially justified. Even despite our dissenting colleagues' efforts to argue the Secretary's case and their accusation that we have applied an "erroneous legal test," *Post* at 22 (Bartley, J., dissenting), it is clear that our colleagues merely disagree with the weight the majority has assigned to various factors under the totality-of-the-circumstances test.

one factor is dispositive; thus, whether the Government's position comported with then-existing precedent "is an undeniably important factor," but "does not . . . resolve the substantial justification inquiry." *Patrick*, 668 F.3d at 1332; *see Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000) (explaining that substantial justification is measured "against the law that was prevailing at the time the government adopted its position"). Indeed, where the Secretary "interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification." *Patrick*, 668 F.3d at 1330-31.

Our dissenting colleagues believe that the above-quoted language is dicta because it was not essential to *Patrick*'s holding. We disagree that this language is dicta, as this language is tied directly to the Federal Circuit's holding that a court must "'look at the entirety of the government's conduct,' including the agency actions that gave rise to the litigation," to determine whether the Government's position was substantially justified. *Id.* at 1333-34 (quoting *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991)). Dicta or not, the Federal Circuit's considered view on a matter is entitled to deference. *See DaimlerChrysler Corp. v. United States*, 361 F.3d 1378, 1385 n.3 (Fed. Cir. 2004) (noting that, even if a Supreme Court statement were dicta, the Federal Circuit "would feel obligated to follow the Supreme Court's explicit and carefully considered statements").

Further, to the extent that our dissenting colleagues contend that *Patrick* is inapplicable because it (1) involved the Secretary's interpretation of a *statute*, and (2) concerned situations where the interpretation of a statute was contrary to its plain language *and* not supported by the legislative history, we find their rationale lacking. As to the first contention, the first case cited by *Patrick* in support of the quoted proposition concerned the interpretation of a regulation, *see Patrick*, 668 F.3d at 1331 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004)), and there is no basis for limiting *Patrick*'s guidance to statutory interpretation, *see Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (noting that canons of statutory interpretation apply to interpreting regulations). Moreover, *Patrick* is indeed applicable because the interpretation of § 3.321(b)(1) necessarily required the Federal Circuit to consider the regulation's authorizing statute. *Johnson II*, 762 F.3d at 1365 ("[T]he plain language of § 3.321(b)(1) is consistent with the language of [38 U.S.C.] § 1155 authorizing the regulation.").

6

As to the second contention, although legislative history is not involved in Mr. Butts's case, the dissenters fail to appreciate the significance of the Federal Circuit's finding that there was no policy basis for the Secretary's proffered interpretation, which was contrary to the plain wording of his own regulation. *Johnson II*, 762 F.3d at 1365-66. Further, although, as our dissenting colleagues note, the Federal Circuit did not specifically hold that the regulatory history of § 3.321(b)(1) does not support the Secretary's interpretation, the Federal Circuit's observation that there is no policy justification for the Secretary's interpretation is an implicit finding that there is no regulatory support for the interpretation.

Finally, we reiterate that it is the Secretary's burden to demonstrate that he was substantially justified in his actions under the totality of the circumstances and, in this instance–as stated in the text of the Court's decision–he fails to do so.

## B. Prevailing Party

Contrary to the Secretary's argument, the parties' JMPR was predicated on administrative error, rather than a change in caselaw. Although the JMPR discusses *Johnson II*, the motion specifically states that remand is warranted because the Board decision "*does not comply* with the requirements of 38 C.F.R. § 3.321 (2014)." JMPR at 2 (emphasis added). This language explicitly concedes error. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991) ("The B[oard] is not free to ignore regulations which the VA has adopted."). Notably, the Court rejects the Secretary's implication at oral argument that a remand order based on administrative error must contain the term "error." Oral Argument at 23:20-25, *Butts v. McDonald*, U.S. VET. APP. NO. 14-3019 (Argued Sept. 22, 2015), https://www.uscourts.cavc.gov/oral_arguments_audio.php. As the Federal Circuit has recognized, administrative error may be clear from the record despite "artfully worded orders" that avoid certain terminology. *Kelly*, 463 F.3d at 1355 (discussing a Court remand order); *see also Zuberi v. Nicholson*, 19 Vet.App. 541 (2006) (determining that a JMR based on the Board's failure to discuss an applicable regulation conceded administrative error). Thus, the language in the JMPR clearly concedes error and the Court holds that Mr. Butts is a prevailing party for purposes of the EAJA. *See Thompson*, 24 Vet.App. at 178.

7

C. Substantial Justification

As explained above, the following factors are among those to be considered when determining whether the Secretary's position is substantially justified: "[M]erits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act." *Stillwell*, 6 Vet.App. at 302; *see Cline*, 26 Vet.App. at 327 ("The Court will consider the applicable *Stillwell* factors, as well as any other circumstances that may apply, in determining whether the totality of the circumstances supports the reasonableness of VA's position in this case."). In this matter, as in *Cline*, the *Stillwell* factors of reasons given, consistency with judicial precedent, and consistency with VA policy "have a high degree of overlap because much of the Secretary's reasoning is based on his adherence to prior precedent." *Cline*, 26 Vet.App. at 329.

The Secretary argues that his position at the administrative stage was substantially justified because the Board was bound by this Court's decision in *Johnson I* and the Board decision was consistent with *Johnson I*. Secretary's Resp. to Appl. at 4; *see Clemmons v. West*, 12 Vet.App. 245, 247 (1999) (finding the Secretary's administrative position substantially justified where the Board relied on then-current caselaw). The Secretary also asserts under his "reasons given" that his interpretation of § 3.321(b)(1) at the administrative stage was reasonable in light of the scheme of the rating schedule because it assigns schedular ratings on a disability-by-disability basis. *See* Secretary's Resp. to Court's Aug. 20, 2015, Order. At oral argument, the Secretary could not articulate any additional factors demonstrating the reasonableness of his position under the totality-of-the-circumstances test. *See* Oral Argument at 38:18-39:51, *Butts v. McDonald*, U.S. VET. APP. NO. 14-3019 (Argued Sept. 22, 2015), https://www.uscourts.cavc.gov/oral_arguments_audio.php (responding "I believe that is all [the factors] for this case" when asked by the Court whether it should consider factors other than consistency with *Johnson I* and the scheme of the rating schedule).

*1. Reasons Given and Consistency with Judicial Precedent*

The Secretary avers that the July 2014 Board decision was consistent with *Johnson I*. However, the Board's decision does not cite or discuss that opinion. It is therefore unclear whether the Board relied on the then-current *Johnson I* decision to deny referral for extraschedular consideration. Nevertheless, the Board is bound by a decision of this Court while an appeal is pending. *Ribaudo v. Nicholson*, 20 Vet.App. 552, 563 (2007) (en banc). Thus, one factor that weighs

in favor of the Secretary's position is that the Board's decision was consistent with existing judicial precedent. *See Stillwell*, 6 Vet.App. at 302 (explaining that "consistency with judicial precedent" is a factor to consider).

As the Federal Circuit noted in *Patrick*, however, "[t]he fact that the Veterans Court had previously upheld the VA's erroneous interpretation of [a statute] does not . . . resolve the substantial justification inquiry." 668 F.3d at 1332. This is true even where the Court addressed a question of first impression, *see Felton*, 7 Vet.App. at 281 ("We emphasize, however, that we are not adopting a per se rule that a case of first impression will always render the Government's position substantially justified."), as "'the EAJA does not suggest that an agency's position is substantially justified because its policy goes years without challenge or change,'" *id.* (quoting *Edwards v. Griepentrog*, 783 F. Supp. 522, 525 (D. Nev. 1991)). Thus, under the totality-of-the-circumstances test, the Secretary's compliance with precedent does not relieve the Court of its duty to evaluate the reasonableness of the Secretary's regulatory interpretation and his conduct at the administrative level. *See Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007) ("[T]he Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not substantially justified." (internal citations and quotations omitted)).

Our dissenting colleagues contend that the varying views of the Judges in *Johnson I* demonstrate that reasonable minds can differ. *Post* at 19 (Lance, J., dissenting), 36 (Bartley, J., dissenting). This argument assumes that the varying viewpoints were all reasonable. Notably, the majority in *Johnson I* did not render a de novo interpretation of § 3.321(b)(1) and instead deferred to the Secretary's interpretation based on the erroneous determination that the regulation was ambiguous. *Johnson I*, 26 Vet.App. at 243. *Compare id*. at 251 (Moorman, J., concurring) (deferring to the Secretary's interpretation because "Federal Circuit precedent requires deference despite an alternative reading of the regulation that appears clear on its face"), *with Smith v. Nicholson*, 451 F.3d 1344, 1349-50 (Fed. Cir. 2006) (stating that the Secretary's interpretation of his own regulations is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation" (internal quotation marks omitted)). Otherwise stated, the majority simply erred when it deferred to the Secretary's interpretation in *Johnson I*, and that error does not bootstrap the Secretary's error into reasonable action under the totality of the circumstances.

Further, one of our dissenting colleagues contends that the Board's reliance on our binding precedent is paramount to the substantial-justification analysis, and that failing to find that the Secretary met his burden in this context "chills the Government's ability to invoke substantial justification." *Post* at 21 (Lance, J., dissenting). Such an analysis, however, turns compliance with prior precedent into a dispositive factor, contrary to the requirement that the substantial justification analysis be based on the totality of the circumstances. *See Patrick*, 668 F.3d at 1332. It is therefore relevant to consider the totality of the circumstances surrounding the Secretary's action, including whether the Secretary "had adopted an interpretation . . . wholly unsupported by either the plain language of the statute or its legislative history." *Id.* at 1333.

Here, the Secretary's interpretation of § 3.321(b)(1) contradicted the plain language of the regulation, which provides for the referral of an extraschedular evaluation based on the combined effect of multiple disabilities. This factor weighs heavily against a finding of substantial justification, and, while not dispositive, makes it "difficult to establish substantial justification." *Id.* at 1331; *see also Johnson II*, 762 F.3d at 1365-66 (holding that the language in § 3.321(b)(1) "contemplates that multiple disabilities may be considered together in referring veterans for extraschedular consideration").[4]

In sum, contrary to our dissenting colleagues' position, nothing in this opinion limits the binding authority of this Court's decisions or authorizes the Secretary to ignore the Court's rulings. Rather, this opinion merely reflects that, under the EAJA's totality-of-the-circumstances analysis, the Secretary may be required to pay EAJA fees despite following precedent. *See Patrick*, 668 F.3d at 1332 (noting that compliance with precedent is one factor). Beyond being contemplated by the EAJA framework, the fact that the Secretary may have to pay EAJA fees despite following precedent

---

[4] Some of our dissenting colleagues contend that our reliance on *Johnson II* is improper because the reasonableness of the Secretary's actions at the administrative stage must be assessed only in light of the information available at that time. This view, however, misreads our consideration of *Johnson II*. Our analysis of *Johnson II* focuses on *why* the Federal Circuit determined that the Secretary was wrong; i.e., the fact that the Secretary's proffered interpretation contravened the plain language of the regulation, lacked policy support, and was not logical. *See Johnson II*, 762 F.3d at 1366; *see also Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) ("Courts evaluating substantial justification must . . . analyze *why* the government's position failed in court."). These factors did not suddenly materialize after the Federal Circuit issued its opinion; rather, the shortcomings in the Secretary's position predated *Johnson II* and the underlying Board decision. The Federal Circuit merely highlighted these preexisting issues in *Johnson II*.

is necessary to effectuate EAJA's purpose: to eliminate financial barriers for challenging governmental actions. *See Comm'r, I.N.S.*, 496 U.S. at 163. If compliance with precedent was a bar to EAJA, as the dissent effectively posits, veterans with limited financial means would face even greater difficulty obtaining counsel to bring valid challenges to existing caselaw.

### 2. Reasons Given and Consistency with VA Policy

The Secretary also avers that the July 2014 Board decision was consistent with VA policy. The Federal Circuit, however, determined that there was "no logic" and no policy support for his interpretation that § 3.321(b)(1) applied only to service-connected disabilities on a disability-by-disability basis "and not also on the collective impact of all of the veteran's disabilities." *Johnson II*, 762 F.3d at 1366 (noting that there is no basis for a policy "[l]imiting referrals for extra-schedular evaluation to considering a veteran's disabilities individually" while "ignor[ing] the compounding negative effects that each individual disability may have on the veteran's other disabilities"). Further, as Judge Davis stated in his dissent to *Johnson I*, which Judge Bartley joined, "the VA disability evaluation process frequently requires that it evaluate multiple disabilities collectively in a manner clearly beyond the application of fixed disability percentages for individual disabilities," and "[e]valuating the cumulative effect of several service-connected disabilities together is therefore in no way outside the ability of VA raters and a 'disability-by-disability interpretation of § 3.321(b)' is no more 'consistent with the statutory and regulatory scheme' than the cumulative approach."[5] *Johnson I*, 26 Vet.App. at 266 (Davis, J., dissenting) (internal citation omitted). Thus, the Court is not persuaded that consistency with VA policy is a factor that weighs in favor of substantial justification.

---

[5] One of our dissenting colleagues argues that the scheme or the rating schedule supports the Secretary's interpretation because the VA compensation system requires that each disability be rated individually and thereafter combined under the combined ratings table when necessary. *Post* at 20 (Lance, J., dissenting). He notes that total disability ratings based on individual unemployability (TDIU) are the "*only* deviation from this system," because TDIU involves a "unique question . . . *explicitly requiring* an analysis of the combined effects of multiple conditions." *Id.*, n.10 (citing 38 C.F.R. § 4.16(a) (2015)). Like TDIU and § 4.16(a), however, referral for extraschedular consideration under § 3.321(b)(1) involves a unique question that arises only in the "exceptional case" where schedular evaluations are found to be inadequate. 38 C.F.R. § 3.321(b)(1). Further, § 3.321(b)(1) explicitly requires an analysis of the combined effects of multiple conditions because the regulation permits an extraschedular award based on the impairment of earning capacity "due exclusively to the service-connected disability or *disabilities*." *Id.* (emphasis added); *see Johnson II*, 762 F.3d at 1365.

11

*3. Reasons Given and Consistency with Scheme of VA Disability Benefits*

The Secretary argues that his interpretation of the regulation was reasonable based on the scheme of the rating schedule. The Court is not persuaded by this argument given that the Secretary's interpretation of § 3.321(b)(1) was found to be inconsistent with both the language and the purpose of the regulation, which is "'[t]o accord justice . . . to the exceptional case where the schedular evaluations are found to be inadequate." *Johnson II*, 762 F.3d at 1365 (citing § 3.321(b)(1)); *see* General Rating Considerations, Exceptional Cases, 26 Fed. Reg. 1561, 1583 (Feb. 24, 1961) (noting that an extraschedular rating may be awarded based on "disability or disabilities"). Additionally, the Federal Circuit found the plain language of § 3.321(b)(1) consistent with 38 U.S.C. § 1155, the statute authorizing the Secretary to "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combinations of injuries." *Johnson II*, 762 F.3d at 1365.

Further, the Secretary's interpretation is not supported by the promulgating history of the regulation. *See Johnson I*, 26 Vet.App. at 257-59 (Kasold, C.J., dissenting). The language in section 1155 permitting extraschedular evaluations based on a veteran's combined injuries distinguishes this case from *Felton*, in which the Court found the Secretary substantially justified in promulgating a later-invalidated regulation "[g]iven the statutory silence on the particular matter." 7 Vet.App. at 24. The statute here is not silent; to the contrary, it authorizes the Secretary to consider collective disabilities for evaluating a veteran's entitlement to disability compensation. Therefore, the Secretary has not demonstrated that "the regulation it violated was ambiguous, complex, or required exceptional analysis." *See Meinhold v. U.S. Dep't of Defense*, 123 F.3d 1275, 1278 (9th Cir. 1997) ("The government may avoid EAJA fees if it can prove that the regulation it violated was ambiguous, complex, or required exceptional analysis."). Taken together, these factors weigh against the Secretary.

Significantly, despite the language of both the statute and regulation, the Secretary adopted guidelines from the *VA Adjudication Procedures Manual* (M21-1MR) that say absolutely nothing about a veteran's collective disability picture. *See* M21-1MR, pt. III, subpt. iv., ch. 6, sec. B(5)(c) (instructing that claims be submitted for extraschedular consideration under § 3.321(b)(1) if "schedular evaluations are considered to be inadequate for an individual disability"). The guidelines interpreting the statute and regulation are hardly consistent with the legislative scheme and the

12

veterans benefit arena generally, which is "intended to be uniquely pro-claimant." *Kelly*, 463 F.3d at 1353 (citing *Hodge v. West*, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998)). This is another factor that weighs against the Secretary's position.

Presenting an argument not argued by the Secretary in his briefing on substantial justification, our dissenting colleagues contend that the Secretary was reasonably justified at the administrative level in part because the M21-1MR contains no language regarding a veteran's collective disability picture, and because "the Secretary represented, and this Court has no cause to doubt, that 'a sampling of Board decisions demonstrates that the Board generally follows VA's long-standing interpretation' of the regulation to require individualized extraschedular consideration." *Post* at 34 (Bartley, J., dissenting) (internal citation omitted). The argument that the M21-1MR is silent on collective disability is irrelevant because the M21-1MR does not preclude extraschedular evaluations based on the veteran's collective disabilities. *See Johnson I*, 26 Vet.App. at 259-60 (Kasold, J., dissenting) (noting that the M21-1MR does not specifically prevent rating officials from forwarding a claim for extraschedular consideration on a collective basis). Even if it did, the M21-1MR cannot trump § 3.321(b)(1), which clearly provides for extraschedular consideration on a collective disability basis. *See Johnson II*, 762 F.3d at 1365.

Moreover, we note that the Secretary has "acknowledge[d] that prior Board decisions might be contrary to this interpretation and 'might misapply the regulation.'" *Johnson I*, No. 10-1785, 2012 WL 3129191 (Aug. 2, 2012) (per curiam order) (quoting Appellee's Memorandum of Law at 8 (June 15, 2012)). Regardless, the Court need not accept the Secretary's bald beliefs regarding Agency conduct. *See Andrew v. Brown*, 837 F.2d 875, 878-79 (9th Cir. 1988) ("The EAJA requires courts to examine the government's conduct, not the Secretary's beliefs with respect to his policies."); *see also Felton*, 7 Vet.App. at 280 (the substantial-justification test "is one of reasonableness, not the agency's own beliefs regarding a particular policy" (quoting *Wilderness Society*, 5 F.3d at 388)). This is particularly true where, as here, the Secretary bears the burden of demonstrating substantial justification and provides only weak support for his assertion that he had long applied the erroneous

regulatory interpretation.[6] Thus, we are not persuaded that the alleged longstanding practice is longstanding or consistently applied.

Our dissenting colleagues argue that there are additional "reasons given" by the Secretary, including that the Secretary was interpreting his own regulation and such interpretation is entitled to deference. *Post* at 31-32 (Bartley, J., dissenting). Deference to the Secretary's interpretation of his own regulation, however, applies only when the regulation is ambiguous. *See Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000). An agency's interpretation is not controlling if it is plainly erroneous. *See Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009). Moreover, it is the Secretary who bears the burden of demonstrating that his position was reasonable and therefore substantially justified. By arguing that his interpretation was entitled to deference during litigation, the Secretary does not meet his burden of demonstrating substantial justification at the administrative stage.

### 4. Totality of the Circumstances

Considering the totality of the circumstances, the Court notes that, although the Secretary was bound by our decision in *Johnson I* even while it was on appeal, he was not required to adjudicate claims involving an application of *Johnson I*; otherwise stated, he could have sought a stay in the adjudication of Mr. Butts's claim until the Federal Circuit issued *Johnson II*. *See Ribaudo*, 20 Vet.App. at 563; *Ramsey v. Nicholson*, 20 Vet.App. 16, 38-39 (2006) ("[W]here the Secretary desires to stay the effect of any decision from this Court pending appeal [to the Federal Circuit], the proper course is to file in the court that has jurisdiction over the particular case a motion to stay the

---

[6] Our dissenting colleagues also cite a number of cases for the proposition that an agency can be substantially justified even when it is wrong. We acknowledge that fact; however, we reiterate that the substantially justified analysis requires consideration of the totality of the circumstances surrounding an agency's actions, and the cases cited by the dissent are distinguishable or inapposite. *See Patrick*, 668 F.3d at 1332. *Pottgieser v. Kizer*, 906 F.2d 1319 (9th Cir. 1990), did not involve a plain-meaning interpretation or an interpretation for which there was no policy justification. *Bates v. Nicholson*, 20 Vet.App. 185 (2006), involved a decision that was exceptional and not easy to predict. *Southern Oregon Citizens Against Southern Sprays Inc. v. Watt*, 556 F. Supp. 155 (D. Ore. 1983), involved a regulation that was straightforward but required exceptional analysis, and the only earlier case interpreting the regulation supported the Government's position. *Saysana v. Gillen*, 614 F.3d 1 (1st Cir. 2010), involved a novel issue. *United States v. Yoffe*, 775 F.2d 447 (1st Cir. 1985), involved a novel issue and difficulty in foreseeing how the regulation would be interpreted by a court, and *White v. Nicholson*, 412 F.3d 1314 (Fed. Cir. 2005), involved a case of first impression with no prior adverse reaction to the regulation in question. In contrast to the aforementioned cases, the decision in *Johnson II* both (1) relied on the plain meaning while noting the absence of policy support and (2) was unexceptional and wholly unsurprising given the split in *Johnson I*.

effect of that case."). Seeking a stay of adjudication may have been prudent given that *Johnson I* involved a split decision.

To be sure, we do not suggest that the Secretary should seek a stay in every precedential case that is on appeal. Given all the factors noted, however, we find that the totality of the circumstances outweigh the Secretary's decision to apply *Johnson I* rather than seek a stay and, all factors considered, we find that the Secretary fails to demonstrate that he was substantially justified in the administrative adjudication of Mr. Butts's claim. *See Locher*, 9 Vet.App. at 537. Indeed, to hold otherwise here would undermine the purpose of EAJA and potentially deter deserving veterans from challenging VA's regulatory interpretations even when the Secretary's actions are contrary to the plain wording of his own regulation and are pending judicial review. *See Scarborough*, 541 U.S. at 407; *Comm'r, I.N.S.*, 496 U.S. at 163.

In sum, distilling all the Secretary's arguments (as well as our dissenting colleagues' comments), there is really only one factor weighing in favor of finding substantial justification at the administrative stage: the Board's obligation to follow judicial precedent. Although that factor is important, under the totality of the circumstances we hold that the obligation to follow judicial precedent in this instance is heavily outweighed by (1) the Secretary's failure to abide by the plain wording of § 3.321(b)(1), and is further outweighed by (2) the fact that the Secretary had no policy basis for his proffered interpretation; (3) the fact that our *Johnson I* decision was a mixed decision and on appeal while the Secretary continued to misapply § 3.321(b)(1); and (4) the fact that the Secretary had the option of staying the case pending a decision on appeal.

Because the Secretary has not shown that his position was substantially justified at the administrative stage, the Court need not discuss substantial justification at the litigation stage. *Locher*, 9 Vet.App. at 537 ("In order to prevail, the Secretary must show substantial justification for both his administrative and litigation positions."). Accordingly, the Court holds that the Secretary has failed to demonstrate that, under the totality-of-the-circumstances analysis, his position in Mr. Butts's case at the administrative stage was substantially justified. *See Patrick*, 668 F.3d at 1332; *Locher*, 9 Vet.App. at 537. Mr. Butts is therefore entitled to an EAJA award.

D. Fee Award

Having determined that Mr. Butts is entitled to an EAJA award, the Court must determine whether his requested fees are reasonable. *See* 28 U.S.C. § 2412(d)(2)(A); *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997). "In determining reasonableness, the Court will consider whether the hours claimed were (1) unreasonable on their face; (2) otherwise contraindicated by the factors for determining reasonableness itemized in *Ussery* . . . ; or (3) persuasively opposed by the Secretary." *Sperry v. Shinseki*, 24 Vet.App. 1, 6 (2010).

The Secretary does not contest the reasonableness of the $3,030.02 award claimed by Mr. Butts. Upon reviewing Mr. Butts's application, however, the Court notes that it contains mathematical errors. Mr. Butts requests $2,169.19 based on 11.3 hours of work by nonattorney practitioner Daniel Marusak at a rate of $191.96 per hour, although 11.3 hours of work at that rate totals $2,169.15. Therefore, $2,169.15 will be awarded. *See Ussery*, 10 Vet.App. at 53. Mr. Butts also requests $441.53 for 2.3 hours of work by attorney Judy Donegan at a rate of $191.96; because 2.3 hours of work at that rate equals $441.51, only $441.51 will be awarded. *See id.* Mr. Butts's application is otherwise reasonable, and the Court will therefore award Mr. Butts $3,029.96 of the $3,030.02 he requested.

## IV. CONCLUSION

On consideration of the foregoing, Mr. Butts's EAJA application is GRANTED in the amount of $3,029.96.

KASOLD, *Judge*, concurring in part and dissenting in part. I fully concur in the Court's determination that (1) the appellant was a prevailing party in the underlying merits case, and (2) the Secretary failed to demonstrate substantial justification in denying Mr. Butts's request for extraschedular consideration on a multiple-disability basis. I write separately on three issues.

First, although I agree with today's result, I dissent from that part of the opinion stating that 38 U.S.C. § 1155 is not silent regarding extraschedular consideration being done on the collective impact of a veteran's disabilities. Although, as the Federal Circuit stated, the Secretary's regulation on extraschedular consideration on a collective-disability basis may be consistent with section 1155,

16

this does not mean the statute addresses this issue. Indeed, to the contrary, on its face the statute is silent with regard to this matter. In sum, the Secretary wrote a regulation that is consistent with section 1155, but he failed to apply the plain wording of his regulation, and he was not substantially justified in such failure. As to his regulation, he has authority to change it. *See* 38 U.S.C. § 501 (providing the Secretary with the authority to prescribe all rules and regulations that are necessary or appropriate to carry out the laws administered by VA); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1380-81 (Fed. Cir. 2001) (recognizing the authority of the Secretary to change regulations after a judicial decision).

Second, I write to add that our dissenting colleagues focus too heavily on this Court's majority decision in *Johnson v. Shinseki* (*Johnson I*), 26 Vet.App. 237 (2013) (en banc), and its binding effect on the Secretary, and too lightly on the right to appeal to the Federal Circuit and that Court's unanimous decision in *Johnson v. McDonald* (*Johnson II*), 762 F.3d 1362 (Fed. Cir. 2014). Although we are a specialized court, we should never fail to recognize that (1) we are only human, and we sometimes simply get it wrong, even clearly wrong, and (2) unlike the Supreme Court, we are not a final arbiter; indeed, appellants before our Court have an absolute right to appeal our decisions. *See* 38 U.S.C. § 7292 (providing an appeal as a matter of right); *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring) ("There is no doubt that if there were a super-Supreme Court, a substantial portion of our reversals of state courts would also be reversed. We are not final because we are infallible, but we are infallible only because we are final.").

Congress provided the right to two judicial appellate reviews, and a decision by this Court, in particular a split decision, should not automatically serve to deny an appellant's right to EAJA fees, particularly when the matter is still being litigated when the Board renders its decision and that decision turns out to be contrary to the plain wording of the regulation. *See Johnson II*, 762 F.3d at 1362 ("The plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities."); *see also Patrick v. Shinseki*, 668 F.3d 1325, 1332 (Fed. Cir. 2011) ("The fact that the Veterans Court had previously upheld the VA's erroneous interpretation of [a statute] does not . . . resolve the substantial justification inquiry.").

Third, with regard to prevailing-party status, suffice it to state that the Federal Circuit's holding that the plain language of § 3.321(b)(1) encompassed extraschedular consideration on a

collective-disability basis was a finding that the regulation always encompassed this. *See SKF USA, Inc. v. United States*, 512 F.3d 1326, 1330 (Fed. Cir. 2007); *Patrick*, 668 F.3d at 1329. Ergo, an admission by the Secretary that the underlying Board decision did "not comply with the requirements of 38 C.F.R. § 3.321 (2014)," JMPR at 2, is, as the Court holds today, a clear admission of error. Similarly, with regard to substantial justification, acting contrary to the plain meaning of a regulation will rarely be substantially justified and, as the Court holds today, the Secretary fails to demonstrate substantial justification.

LANCE, *Judge*, with whom MOORMAN, *Judge*, joins, dissenting: With due respect to my colleagues in the majority, I would hold that the Secretary's position was substantially justified, thereby precluding an EAJA award, and so I must dissent.

The crux of the majority's substantial justification analysis is that "there is really only one factor weighing in favor of finding substantial justification at the administrative stage: the Board's obligation to follow judicial precedent," which the majority contends is outweighed by five opposing factors. *Ante* at 15. This analysis misapplies the totality-of-the-circumstances test for substantial justification, transforming it from a substantive "judgment call," *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991), into a rote mathematical calculation, and it places the Secretary and the Board in an impossible position for future cases.

First, the majority opinion undervalues the factors weighing in favor of a finding of substantial justification. Its grudging allowance that the Board's decision was consistent with then-binding judicial precedent obscures the fact that the Board *could do nothing but* follow this Court's precedent.[7] Our case law is clear that the Court's "decisions are 'binding as of the date the decision is issued and are to be considered and, when applicable, are to be followed by VA agencies of original jurisdiction, the Board, . . . and the Secretary in adjudicating and resolving claims.'" *Ramsey v. Nicholson*, 20 Vet.App. 16, 38 (2006) (quoting *Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991)); *see Ribaudo v. Nicholson*, 20 Vet.App. 552, 560 (2007) (en banc) (holding that to permit the Board to

---

[7] Although I agree with my colleagues in the majority that no one factor should be viewed as *universally* dispositive, *see ante* at 10, I disagree with the majority's implication that each of the factors must be accorded equal weight. On the contrary, under the totality of the circumstances of a particular case, it may very well be that, as here, a single factor so outweighs the others as to be dispositive *on the facts of that case*.

ignore a decision of the Court while an appeal was pending to the Federal Circuit "would be to allow an executive agency to nullify the effect of a judicial decision").

When the Board issued its July 2014 decision on Mr. Butts's appeal, a five-Judge majority of this Court, sitting en banc, had determined that 38 C.F.R. § 3.321(b) was ambiguous and "that the Secretary's interpretation [was] entitled to substantial deference because it is not unreasonable, plainly erroneous, or inconsistent with the regulation or the statutory and regulatory scheme when viewed as a whole." *Johnson v. Shinseki* (*Johnson I*), 26 Vet.App. 237, 245 (2013) (en banc), *rev'd sub nom. Johnson v. McDonald* (*Johnson II*), 762 F.3d 1362 (Fed. Cir. 2014). The Board does not possess the authority to formally interpret VA regulations.[8] *See Hudgens v. Gibson*, 26 Vet.App. 558, 563 n.5 (2014) ("[T]he Board is *not* the body tasked with interpreting regulations on the Secretary's behalf."), *rev'd sub nom. Hudgens v. McDonald*, __ F.3d __, No. 2015-7030, 2016 WL 2893254 (Fed. Cir. May 18, 2016). Thus, the Board could do nothing but apply the interpretation of § 3.321(b)(1) endorsed by the Court in *Johnson I. Ramsey*, 20 Vet.App. at 38; *Tobler*, 2 Vet.App. at 14 (holding that the Court's decisions are binding "unless or until overturned by this Court *en banc*, the United States Court of Appeals for the Federal Circuit, or the Supreme Court"). The fact that the Board did not specifically cite *Johnson I* does not change this. *See Jennings v. Mansfield*, 509 F.3d 1362, 1366 (Fed. Cir. 2007) (rejecting the notion that the Board is required "to use particular statutory language, or 'terms of art'").

At the same time, the majority wholly ignores the significance of the merits of *Johnson I*. Although the Federal Circuit ultimately reversed this Court's decision in *Johnson II*, the fact that five Judges of this Court—including two Judges in the majority of this case—determined that the Secretary's interpretation of § 3.321(b)(1) was reasonable suggests that there is, at a minimum,"a dispute over which reasonable minds could differ."[9] *Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir.

---

[8] I do not mean to suggest that the Board cannot or should not "decide the material issues of law and fact presented on the record," 38 U.S.C. § 7104(d)(1), but rather that an individual Board decision cannot speak authoritatively for the Secretary or deviate from established VA policy, *see* 38 C.F.R. §§ 19.5 (2015) (setting forth the authorities binding on the Board), 20.1303 (2015) (Board decisions are not precedential).

[9] The majority attempts to discount the significance of *Johnson I* by noting that the majority in that case "did not render a de novo interpretation of § 3.321(b)(1)." *Ante* at 9. This red herring improperly conflates *reasonableness* with *correctness*. Although the Court in *Johnson I*, as the majority correctly notes, did not interpret § 3.321(b)(1) in the first instance, the Court *did* hold that § 3.321(b)(1) was ambiguous and that the Secretary's interpretation was "not

19

2012). "[A] position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)).

On the other side of the scale, the majority's analysis overstates the factors weighing against a finding of substantial justification. Although the majority discounts the Secretary's interpretation of § 3.321(b)(1) as both contrary to "the plain wording" of the regulation and unsupported by any policy justification, *ante* at 15, merely saying that the Secretary's interpretation was wrong in different ways does not give that error more weight. To hold otherwise would essentially conflate substantial justification with prevailing party status, which cannot be the case. *See Moskal v. United States*, 498 U.S. 103, 109 (1990) (noting "the established principle that a court should 'give effect, if possible, to every clause and word of a statute'" (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955))).

Similarly, although the majority places great weight on the fact that § 3.321(b)(1)'s authorizing statute, 38 U.S.C. § 1155, "is not silent" but "authorizes the Secretary to consider collective disabilities for evaluating a veteran's entitlement to disability compensation," *ante* at 12, its analysis ignores the fundamental structure of VA's compensation system, which rates each disability individually and accounts for combined effects using VA's combined ratings table, *see* 38 C.F.R. § 4.25 (2015); *see also* 38 U.S.C. § 1157 (requiring the Secretary to provide for the combination of disability ratings for disabilities incurred in multiple periods of service). Indeed, "the combined ratings table is the *only* method VA employs to rate multiple disabilities together." *Gazelle v. McDonald*, 27 Vet. App. 461, 467 (2016); *see id.* at 471 (holding that the combined ratings table must also be used to determine the proper rate of special monthly compensation (SMC) under 38 U.S.C. § 1114(s)). Thus, far from being contrary to or even unsupported by statute, the Secretary's proffered interpretation of § 3.321(b)(1) treats extraschedular ratings in exactly the same manner as schedular ratings and SMC.[10]

---

unreasonable, plainly erroneous, or inconsistent with the regulation," *Johnson I*, 26 Vet.App. at 245. I stand by my "assum[ption] that the varying viewpoints [in *Johnson I*] were all reasonable," *ante* at 9, including the views of the two Judges in the majority of both *Johnson I* and this case.

[10] The *only* deviation from this system—total disability ratings based upon individual unemployability—involves the unique question of whether a claimant is "unable to secure or follow a substantially

Finally, and most critically, it does not appear that the majority has fully considered the possible—and potentially wide-reaching—consequences of its decision. As I wrote in *Cline v. Shinseki*, I am "troubled by the Secretary's failure to argue substantial justification in response to the vast majority of applications for attorney fees and expense filed pursuant to the EAJA before this Court." 26 Vet.App. 325, 333 (2013) (Lance, J., dissenting). Congress's intent when it enacted the EAJA was to "ensure that litigants 'will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'" *Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011) (quoting *Scarborough v. Principi*, 541 U.S. 401, 407 (2004)). The EAJA was *not*, however, "intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Stillwell v. Brown*, 6 Vet.App. 291, 303 (1994).

By holding that the Secretary was not substantially justified when the Board followed then-binding precedent, the majority undercuts the Board's obligation to apply the law, puts the Secretary in the impossible position of having to second-guess this Court's judgment while an appeal to the Federal Circuit is pending, and chills the Government's ability to invoke substantial justification as a way to protect the public fisc. To then recklessly suggest that the Secretary should have stayed this case *despite* an en banc majority ruling in his favor, *ante* at 14, the majority underscores its disregard for the consequences of this decision and invites the Secretary to ignore the directives of the Court in future cases. This view of the law is simply untenable.

There are strong arguments both for and against a finding of substantial justification in this case. On the one hand, as the Federal Circuit explained in *Johnson II*, "the plain language of § 3.321(b)(1) is unambiguous," and there is "no policy justification for interpreting § 3.321(b)(1) in the way that the government advocates." 762 F.3d at 1366. On the other hand, a majority of this Court, sitting en banc, determined that § 3.321(b)(1) was ambiguous and that the Secretary's interpretation was reasonable, *Johnson I*, 26 Vet.App. at 245, and the Board was bound by that

gainful occupation as a result of service-connected disabilities," thereby *explicitly requiring* an analysis of the combined effects of multiple conditions. 38 C.F.R. § 4.16(a) (2015).

decision at the time it decided Mr. Butts's case, *see Ribaudo*, 20 Vet.App. at 560; *Ramsey*, 20 Vet.App. at 38.

I would hold that the Secretary was substantially justified at the administrative stage, and so I would deny Mr. Butts's EAJA application. I must, therefore, respectfully dissent.

BARTLEY, *Judge*, with whom LANCE, PIETSCH, and MOORMAN, *Judges*, join, dissenting: I agree with Judge Lance that the Government's position was substantially justified and therefore join his dissent to the extent that he would hold that EAJA fees be denied in this case. I write separately, however, to point out that the appropriate analysis for substantial justification asks whether, considering the totality of the circumstances, the Agency's litigation and agency-level positions were reasonable at the time they were taken. Although the majority gives lip service to the totality of the circumstances, in substance the majority focuses on only one factor, the Federal Circuit's merits determination in *Johnson v. McDonald* (*Johnson II*), 762 F.3d 1362 (Fed. Cir. 2014), and impermissibly bases its reasonableness determination on hindsight judgment. The majority's troubling fixation on the merits determination in *Johnson II*, rather than inquiring whether the Secretary's positions at both the administrative and litigation phases of Mr. Butts's case were such that a reasonable person could think them correct at the time they were taken, represents the application of an erroneous legal test. As described below, I would deny EAJA fees and hold that the Secretary has met his burden of establishing substantial justification in (1) his administrative position of applying 38 C.F.R. § 3.321(b)(1) to allow for extraschedular consideration of individual disabilities, following a lengthy litigation on a novel legal argument and this Court's en banc ruling in the Secretary's favor on that argument, and (2) his litigation position of agreeing to a prompt remand.

## I. APPLICABLE LAW

### A. Principles of Substantial Justification under EAJA

"[T]he substantial justification inquiry requires an analysis of the 'totality of the circumstances' surrounding the government's adoption of a particular position." *Patrick v. Shinseki*, 668 F.3d 1325, 1332 (Fed. Cir. 2011) (quoting *Smith v. Principi*, 343 F.3d 1358, 1362 (Fed. Cir.

2003)); *see Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993); Secretary's Response (Resp.) to EAJA Application at 10-11. "The standard to be applied . . . for the issue of substantial justification is one of reasonableness . . . ." *Essex Electro Eng'rs., Inc. v. United States*, 757 F.2d 247, 252 (Fed. Cir. 1985); *see Cline v. Shinseki*, 26 Vet.App. 325, 326 (2013) (This "inquiry is designed to evaluate the reasonableness of 'the position taken by the government on the issue on which the claimant prevailed.'" (quoting *Smith*, 343 F.3d at 1363)). "The totality of the circumstances, by its very description, does not exclude any valid issue from consideration." *White v. Nicholson*, 412 F.3d 1314, 1317 (Fed. Cir. 2005). "[A] position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). "Put another way, substantially justified means there is a dispute over which reasonable minds could differ." *Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012). "Substantially justified" does not mean "justified to a high degree," but rather means "'justified in substance or in the main'–that is, justified to a degree that could satisfy a reasonable person." *Underwood*, 487 U.S. at 565.

Courts do not bother asking whether correct Government positions were substantially justified. *See, e.g.*, *Patrick*, 668 F.3d at 1330 (substantial justification involves asking whether the Government "adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation"). Therefore, it should be obvious that "[t]he Secretary's failure to prevail on the merits of the case does not raise a presumption that his position was not substantially justified." *Bates v. Nicholson*, 20 Vet.App. 185, 191 (2006); *see Pottgieser v. Kizer*, 906 F.2d 1319, 1324 (9th Cir. 1990) ("Failure to prevail does not raise a presumption that the government's position was unreasonable."); *United States v. Yoffe*, 775 F.2d 447, 450 (1st Cir. 1985) ("Since fees are awarded only to a prevailing party, it follows that the fact that the government lost does not create a presumption that its position was not substantially justified."); *see also Morgan v. Perry*, 142 F.3d 670, 685 (3d Cir. 1998) ("The EAJA is not a 'loser pays' statute."). The Supreme Court has stated that "the fact that one court agreed or disagreed with the Government does not establish whether or not its position is substantially justified." *Underwood*, 487 U.S. at 565.

23

Moreover, no matter how strongly worded a court opinion invalidating a Government position on the merits may be, a subsequent court reviewing an EAJA application as to that position may not simply cite the merits opinion as proof that the position was not substantially justified, but must itself conduct an independent analysis to determine whether the government's position, at the time that position was taken, was "justified to a degree that could satisfy a reasonable person." *Id.*; *see Gonzales v. Free Speech Coal.*, 408 F.3d 613, 620 (9th Cir. 2005) (reversing district court's EAJA award that relied on the "clarity of the" Supreme Court's merits determination because, "[t]o be sure, the Supreme Court soundly rejected the government's arguments. But . . . [b]y putting undue weight on the Supreme Court's holding on the merits, the district court seemed to rely on hindsight, rather than an assessment of the reasonableness of the government's position *at the time of the litigation*." (emphasis in original)); *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005) ("In considering substantial justification under EAJA, . . . as in other areas[,] courts need to guard against being subtly influenced by the familiar shortcomings of hindsight judgment."); *see also Taucher*, 396 F.3d at 1174 ("Courts evaluating substantial justification must instead analyze *why* the government's position failed in court . . . ." (emphasis in original)). Accordingly, unlike prevailing-party status, which simply asks whether the Government lost, substantial justification asks a more nuanced question: even though the Government lost, at the time it made the decision under appeal, was it reasonable in the attempt? *See Roanoke River Basin Ass'n*, 991 F.2d at 139 ("The focus when determining whether a petitioner is a prevailing party is aimed at the degree of success obtained by the petitioner. Whether the government's 'position in the litigation' is substantially justified, in contrast, focuses, not the on the government's success or failure, but on the reasonableness of its position in bringing about or continuing the litigation.").

Against this backdrop, this Court has identified several important factors to consider in the totality of the circumstances, "including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal." *Stillwell v. Brown*, 6 Vet.App. 291, 302 (1994); *see also Cline*, 26 Vet.App. at 327-32 (discussing and applying the *Stillwell* factors). The Court in *Stillwell* further recognized:

> Two special circumstances may also have a bearing upon the reasonableness of the litigation position of . . . VA, and of the action or inaction by . . . VA at the administrative level. One is the evolution of VA benefits law since the creation of

24

this Court that has often resulted in new, different, or more stringent requirements for adjudication. The second is that some cases before this Court are ones of first impression involving good[-]faith arguments of the government that are eventually rejected by the Court.

6 Vet.App. at 303. The Court also noted that the Board's decision may issue at a time when "the statutory and regulatory framework presents a 'confusing tapestry,' . . . in which the meaning is not easily discerned." *Id.*; *see Meinhold v. U.S. Dep't of Def.*, 123 F.3d 1275, 1278 (9th Cir. 1997) ("Consequently it is not fair to conclude that every violation of a regulation by an agency stamps its position as unreasonable. The government may avoid EAJA fees if it can prove that the regulation it violated was ambiguous, complex, or required exceptional analysis."). To determine whether the Secretary is substantially justified, the Court must "consider the applicable *Stillwell* factors, as well as any other circumstances that may apply." *Cline*, 26 Vet.App. at 327.

The Federal Circuit has held that "[w]hether or not the position adopted by the government comports with then-existing precedent on a particular issue is an undeniably important factor." *Patrick*, 668 F.3d at 1332. Moreover, "substantial justification is measured, not against the case law existing at the time the EAJA motion is decided, but rather, against the case law that was prevailing at the time the government adopted its position." *Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000); *see Owen v. United States*, 861 F.2d 1273, 1275 (Fed. Cir. 1998) (en banc) (finding that "the position of the government was substantially justified when it was taken, based on precedents then standing"); *(Leaman) Johnson v. Principi*, 17 Vet.App. 436, 442 (2004) ("As to VA's application of the revised regulation in the instant case, the Court cannot find that the Secretary's position at the administrative level was not substantially justified because 'the Board clearly relied upon then-current law.'" (citation omitted)); *see also Gonzales*, 408 F.3d at 620 (EAJA requires an assessment of the "reasonableness of the government's position *at the time of the* [Government action in question]" (emphasis in original)).

Although no single issue is dispositive, courts are more likely to find that the Government's position was substantially justified where that position was invalidated in a case of first impression. *See White*, 412 F.3d at 1316-17 (affirming this Court's finding of substantial justification where case invalidating regulation that Board had relied on in adjudicating EAJA applicant's case was "a case of first impression and [there had been] no prior adverse reaction" to the regulation); *Ozer v.*

25

*Principi*, 16 Vet.App. 475, 479 (2002) (finding the Secretary's position substantially justified where, inter alia, the "case was one of first impression" and "there was no prior disapproval of or challenge to the [Secretary's interpretation]"); *Felton v. Brown*, 7 Vet.App. 276, 283 (1994) (finding the Secretary's position in a case of first impression substantially justified "[g]iven the statutory silence on the particular matter and the lack of a conflict with adverse precedent"); *see also Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011) ("As the Government notes, litigating cases of first impression is generally justifiable.").

This is not to suggest that the lack of previous challenge to an erroneous Government position will always render the Government immune from EAJA fees; rather, "whether a case is one of first impression is only one factor for the Court to consider." *Felton*, 7 Vet.App. at 283. This factor furthers the commonsense principle that "[f]or purposes of the EAJA, the more clearly established are the governing norms, and the more clearly they dictate the result in favor of the private litigant, the less 'justified' it is for the government to pursue or persist in litigation." *Martinez v. Sec'y of Health & Human Servs.*, 815 F.2d 1381, 1383 (10th Cir. 1987) (citation omitted). Thus, the cases construing EAJA recognize a balance between encouraging the vindication of rights by "creating a limited exception to the 'American Rule' against awarding attorneys fees to prevailing parties," *Underwood*, 487 U.S. at 575 (Brennan, J., concurring in part and concurring in the judgment), and not discouraging government agencies from attempting to safeguard taxpayer money by choosing to litigate positions they reasonably believe are correct at the time, *see Roanoke River Basin Ass'n*, 991 F.2d at 139 ("While the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.").

Also important to the case at hand, as Judge Lance identified, are the Court's decisions in *Ramsey v. Nicholson*, 20 Vet.App. 16 (2006), and *Ribaudo v. Nicholson*, 20 Vet.App. 552 (2007) (en banc). In *Ramsey*, the Court emphasized that its "decisions are 'binding as of the date the decision is issued and are to be considered and, when applicable, are to be followed by VA agencies of original jurisdiction, the Board, . . . and the Secretary in adjudicating and resolving claims.'" 20 Vet.App. at 38 (quoting *Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991)). Similarly, in *Ribaudo*,

26

the Court held that allowing the Board to ignore a decision of this Court while an appeal to the Federal Circuit was pending "would be to allow an executive agency to nullify the effect of a judicial decision." 20 Vet.App. at 560. The Board thus is bound by a decision of this Court even while an appeal is pending, absent a motion to stay a class of cases pending the result of that appeal, and the Board must follow the Court's decision "unless or until overturned by this Court *en banc*, the United States Court of Appeals for the Federal Circuit, or the Supreme Court." *Tobler*, 2 Vet.App. at 14.

B. The Secretary's Arguments and the Totality of the Circumstances

The Secretary advanced several reasons why his conduct was substantially justified at both the administrative and litigation phases of Mr. Butts's case. *See* Secretary's Resp. at 9-13 (arguing, inter alia, that he relied on "then current law" at the agency stage, that the issue of collective extraschedular evaluations "present[ed] issues of first impression before this Court" and involved "good faith arguments," that at the litigation stage his conduct was reasonable because he acted promptly to agree to a remand in light of the Federal Circuit's decision in *Johnson II* and thereby "cooperated in speedily resolving the litigation," that "this case involves an evolution of VA benefits law 'that has often resulted in new, different, or more stringent requirements for adjudication,'" and that, under the "totality of the circumstances," his conduct was reasonable. (citing *Essex*, 757 F.2d at 253; *Stillwell*, 6 Vet.App. at 303)). At oral argument, contrary to the majority's contention, he did not suggest any limitation to the arguments the Court should consider. *See ante* at 8. Rather, he added to those arguments, stating that this Court's decision in *Johnson v. Shinseki* (*Johnson I*), 26 Vet.App. 237 (2013) (en banc), was an "authoritative statement that was binding on VA" at the time of the Butts Board decision, and that "there was no reason for the Board to cite *Johnson* because Mr. Butts did not argue below that [the evaluations for] his various service connected disabilities were inadequate on a collective basis."[11] Oral Argument at 25:40-42, 26:03-15, *Butts v. McDonald*, U.S. Vet. App. No. 14-3019(E) (argued Sept. 22, 2015), https://www.uscourts.cavc.gov/oral_arguments_audio.php; *see also id.* at 27:47-53, 28:17-32, 32:38-

---

[11] The Secretary's argument correctly anticipated a decision of this Court, applying *Johnson II*, that postdated oral argument. *See Yancy v. McDonald*, 27 Vet.App. 484, 495 (2016) ("[T]he Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities.").

50 (further discussing the binding nature of the Court's *Johnson I* decision on the Board in Mr. Butts's case).

Further, because we must analyze the totality of the circumstances, not just some of the circumstances, we are not limited to those factors specifically identified by counsel. *See Cline*, 26 Vet.App. at 327 (Court must consider the *Stillwell* factors, "as well as any other circumstances that may apply"); *Felton*, 7 Vet.App. at 286 ("[W]e do not limit our examination of [substantial justification] to a vacuum surrounded by only the four corners of the pleadings and the underlying opinion by the Court. . . . [T]he Secretary argued that VA's position has always been substantially justified, and the Court has merely put that argument to the test."); *see also Patrick*, 668 F.3d at 1332 ("We have repeatedly made clear that the substantial justification inquiry requires an analysis of the 'totality of the circumstances' surrounding the government's adoption of a particular position."); *White*, 412 F.3d at 1317 (substantial justification analysis "does not exclude any valid issue from consideration").

## II. ANALYSIS

### A. Litigation Phase: Case of First Impression Prompts Timely Remand

I agree with the majority that substantial justification must be measured at both the administrative and litigation phases of Mr. Butts's case. *See Locher v. Brown*, 9 Vet.App. 535, 537 (1996). Looking at the totality of the circumstances, including but not limited to the circumstances specifically identified by counsel, there are strong arguments for finding substantial justification at both phases here, which the majority either ignores or misses in its unfortunate fixation on the *Johnson II* merits decision. Although in *Johnson II* the Federal Circuit ultimately invalidated the Secretary's interpretation of § 3.321(b)(1), necessitating remand in this case, that action was taken in a "case of first impression," *see White*, 412 F.3d at 1316-17; *(Leaman) Johnson*, 17 Vet.App. at 442; and, once the Secretary's interpretation was invalidated, the Agency did not "drag its feet" but acted promptly to remand Mr. Butts's appeal and thereby "cooperated in speedily resolving the litigation," *Essex*, 757 F.2d at 253; *Stillwell*, 6 Vet.App. at 302. Both are factors weighing in favor of substantial justification in this case.

28

In both *White* and *(Leaman) Johnson*, the Board in the underlying appeals relied on then-current regulation 38 C.F.R. § 19.9(a)(2), but in the subsequently decided *Disabled American Veterans (DAV) v. Secretary of Veterans Affairs*, 327 F.3d 1339 (Fed. Cir. 2003), a "case of first impression," the Federal Circuit found that regulation inconsistent with 38 U.S.C. § 7104(a) and invalidated it. *See White*, 412 F.3d at 1315. Both cases were remanded after *DAV* was decided, and in the EAJA phases of both *White* and *(Leaman) Johnson*, the Federal Circuit and this Court, respectively, held that the Secretary's actions were substantially justified, under "the totality of the circumstances," because "*DAV v. Sec'y* was a case of first impression and there had been no prior adverse reaction to" the now-invalidated regulation. *(Leaman) Johnson*, 17 Vet.App. at 442; *see also White*, 412 F.3d at 1316-17. Similarly, here the Board decision on Mr. Butts's claim took place at a time when the Secretary's interpretation, though erroneous, had been upheld by this Court, and, once *Johnson II* invalidated that interpretation in a case of first impression, the Secretary acted promptly to secure remand.

The entirety of the Government's conduct at the litigation phase of this case consisted of realizing that remand of the Board decision was required and working with Mr. Butts to have the case promptly remanded. *See* Dkt. No. 14-3019, Joint motion for partial remand (Mar. 9, 2015) (6 months following September 2014 Notice of Appeal); *see also (Leaman) Johnson*, 17 Vet.App. at 442 ("Because the only litigation position taken by the Secretary before this Court was a timely request for remand, the Court holds that the Secretary acted reasonably and was substantially justified at the litigation stage . . . ."); *Pierre v. West*, 12 Vet.App. 92, 97 (1998) (litigation position was reasonable where Government sought remand within 17 months following date of regulatory amendment, which included delays to obtain counsel for appellant, seven extensions of time by appellant, and two extensions of time by Government, and including a 4-month Government delay following appellant's initial brief). Mr. Butts implicitly concedes that the only phase at which substantial justification can be contested is the administrative phase. *See* Appellant's Reply to Secretary's Resp. at 8 ("The Secretary argues that his position at the administrative level and his litigation position were both substantially justified. . . . . The Court should find that his position at the administrative level was *not* substantially justified under the totality of the circumstances." (emphasis in original)); Secretary's Resp. at 12 ("Appellant cites to no action by the Secretary in the

29

proceedings before this Court that was not reasonable."). Thus, although the majority reserves ruling on the issue, the Government has clearly met its burden with respect to substantial justification at the litigation phase. *See Locher*, 9 Vet.App. at 537.

## B. Administrative Phase

### *1. Whether the Position Was Reasonable at the Time the Position Was Taken*

Accordingly, the only matter in dispute is whether the Government has met its burden to show substantial justification at the administrative phase. *Id.* In this regard, it is important to consider the context in which the Board's decision was issued and to impute to the Board the knowledge of only those things that had already happened, not those things that were yet to come. *See Smith v. Principi*, 16 Vet.App. 71, 77 (2002) ("[W]hen viewing the Board's decision in this case, the only issue is whether it is reasonable to find that the Board's decision, at the time it was made, had a reasonable basis in law and fact" because "our concern is 'not what the law now is, but what the government was substantially justified in believing it to have been.'" (quoting *Underwood*, 487 U.S. at 561); *see also Bowey*, 218 F.3d at 1377. In *Smith*, the Board issued a February 6, 2001, decision that addressed the Veterans Claims Assistance Act of 2000 (VCAA), although not as thoroughly as it should have, as determined by a February 22, 2001, decision of this Court, *Holliday v. Principi*, 14 Vet.App. 280, 284 (2001) (holding that all provisions of the VCAA are potentially applicable to claims pending on the date of enactment). 16 Vet.App. at 72-73. *Holliday* prompted the Secretary to agree to a joint motion for remand, as *Johnson II* prompted the Secretary in the present case. *Id.* at 76. In *Smith*, this Court denied EAJA fees on a finding that the Board's position at the administrative phase had been substantially justified because, even though the text of the statute remained unchanged from 2000 to the time of the Board's decision, and although the Board had misapplied the statute, "[a]t the time of the Board's February 6, 2001, decision, the Court had not yet addressed the full scope and effect of the VCAA." *Id.* at 75. Specifically, this Court observed that it would be fundamentally unfair, in determining whether to make the Government pay the appellant's legal fees and expenses, to impute knowledge to the Board that it did not have at the time of its decision. *See id.* at 76 ("There was no way for the Board to have known on February 6, with any reasonable certainty, that on February 22, the Court would interpret the VCAA as holding all provisions of the act potentially applicable to all pending claims.").

30

Accordingly, no matter how persuasive we now find the Federal Circuit's August 6, 2014, interpretation of § 3.321(b)(1), we may not presume that the Board, on July 31, 2014, could have predicted that outcome with "any reasonable certainty." *Id.*; *see also Yoffe*, 775 F.2d at 450 (in denying EAJA fees, court did "not think that the government should be found to have acted without substantial justification because it did not foresee how the court of appeals would interpret the regulations").

## 2. Secretary's Longstanding Interpretation of His Regulation

What the Board may be presumed to know is what happened prior to July 31, 2014, which includes the *Johnson I* litigation phase. In *Johnson I*, where the Secretary interpreted § 3.321(b)(1) in the same way as the Board in the present appeal interpreted it, the Secretary argued that the language in the regulation referring to "schedular evaluations" and "disability or disabilities" was ambiguous, and could refer to either a combined extraschedular evaluation, as Mr. Johnson contended, or "a recognition that a veteran may receive extraschedular ratings for one or more individual disabilities," as the Government contended. *Johnson I*, 26 Vet.App. at 243; *see Stillwell*, 6 Vet.App. at 302 (analyzing "reasons given" for Government's erroneous position). The reasons given for the Secretary's position also included that the Secretary was interpreting his own regulation, and that that interpretation was entitled to a high degree of deference. *Johnson I*, 26 Vet.App. at 243 (citing, inter alia, *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)).

Although the majority dismisses the deference due to an agency's interpretation of its own regulation as irrelevant because deference is due only if the regulation is ambiguous, *ante* at 14, and here, the Federal Circuit ultimately determined that the regulation was not ambiguous, the majority has it backwards, impermissibly substituting a retrospective analysis for what must be a prospective one. The question for substantial justification purposes is whether the Secretary's "cho[ice] to litigate" was reasonable at the time the choice was made, *Roanoke River Basin Ass'n*, 991 F.2d at 139; *see Smith*, 16 Vet.App. at 77, not whether it is reasonable in hindsight, *Gonzales*, 408 F.3d at 620. This inquiry "depends upon all the pertinent facts of the case." *Essex*, 757 F.2d at 252. In hindsight, because the Federal Circuit determined that the regulation's plain meaning was against the Secretary's interpretation, that interpretation would have met the same result whether § 3.321(b)(1) was a statute or a regulation. However, thinking about substantial justification prospectively, as

31

EAJA requires, the fact that the Government was interpreting its own regulation, and not a statute, has a direct bearing on how reasonable its choice to litigate was. Interpreting the language of his own regulation, the Secretary would know that his interpretation would be accepted unless that interpretation were contrary to the regulation's plain meaning. *See Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009); *see also Decker v. N.W. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) ("It is well established that an agency's interpretation need not be the only possible reading of a regulation–or even the best one–to prevail. When an agency interprets its own regulation, the Court, as a general rule, defers to it 'unless that interpretation is "plainly erroneous or inconsistent with the regulation."'" (citation omitted) (quoting *Auer*, 519 U.S. at 461)); *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151 (1991). However, if he were interpreting a statute, he would know that, even if his interpretation were not contrary to the statute's plain meaning, and the Court agreed with him that the statute was ambiguous, he would still have to demonstrate the overall persuasiveness of his position. *See Wanless v. Shinseki*, 618 F.3d 1333, 1338 (Fed. Cir. 2010) (Secretary's interpretation of statutory language is entitled to deference "only in so far as it has the 'power to persuade'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))).

Accordingly, the Secretary was on stronger footing proposing an interpretation of his own regulation than he would have been if he were proposing the same interpretation of a statute. *See Decker*, 133 S. Ct. at 1337; *Skidmore*, 323 U.S. at 140; *Saysana v. Gillen*, 614 F.3d 1, 4 (1st Cir. 2010) (holding the Government's choice to litigate "the question of whether [a provision] was ambiguous, and therefore whether courts had to defer to a reasonable administrative interpretation of [that provision]" was itself reasonable). This principle has real consequences for the reasonableness of the administrative action in the present case. Again, thinking prospectively, in deciding whether or not to issue decisions consistent with *Johnson I*, the Secretary would know that it would be more difficult for the Federal Circuit to reverse *Johnson I* because it involved his interpretation of his own regulation than it would be to reverse his interpretation of a statute: to reject the Secretary's view of his own regulation, the Federal Circuit would have to find that the language plainly was against the Secretary's reading, whereas to reject the Secretary's view of a statute, it

would simply have to find that his interpretation, even for an ambiguous statute, was unpersuasive. *See Skidmore*, 323 U.S. at 140; *Thun*, 572 F.3d at 1369.[12]

### 3. Consistency with Regulatory Scheme

The reasons given also included that the Secretary, rather than proposing his interpretation for the first time in litigation, had long construed the regulation to mean that a veteran was entitled to extraschedular consideration on a disability-by-disability basis and had recorded that construction in his *Adjudication Procedures Manual*. *Johnson I*, 26 Vet.App. at 243-44 (citing VA ADJUDICATION PROCEDURES MANUAL (M21-1MR), pt. III, subpt. iv, ch. 6, sec. B.5.c (claims are to be submitted for extraschedular consideration "if the schedular evaluations are considered inadequate for an individual disability"). *See Stillwell*, 6 Vet.App. at 302 (identifying "consistency with . . . VA policy with respect to such position" as factor weighing in favor of substantial justification); *cf. Salmi v. Sec'y of HHS*, 712 F. Supp. 566, 569-70 (W.D. Mich. 1989) (no substantial justification where Secretary "fail[ed] to apply *his own* long-standing de minimus construction of the severity requirement" (emphasis in original)). The reasons given included the Secretary's argument that this Court in *Thun v. Peake* cited with approval the M21-1MR provision stating that claims be submitted for extraschedular consideration if the rating schedule is inadequate "for an individual disability" and that the Court noted that the analysis must begin with "a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Johnson I*, No. 10-1785, Appellee's Memorandum of Law at 10, 12 (Jun. 15, 2012) (quoting *Thun v. Peake*, 22 Vet.App. 111, 115 (2008)). The Secretary argued, moreover, that the Federal Circuit, in affirming this Court's *Thun* decision, deferred to VA's interpretation of § 3.321(b)(1) as set forth in the M21-1MR. *Id.* at 15 (quoting *Thun v. Shinseki*, 572 F.3d 1366, 1369 (2009)).

---

[12] The majority observes: "By arguing that his interpretation was entitled to deference during litigation, the Secretary does not meet his burden of demonstrating substantial justification at the administrative stage." *Ante* at 14. This observation mistakes the purpose of the above discussion and confuses the litigation phase in Mr. Johnson's case with the litigation phase in Mr. Butts's case. At the litigation phase in Mr. Butts's case, the Secretary simply agreed to a prompt remand. For today's purposes, the Secretary need not show that his position at the litigation phase of *Johnson I* was reasonable. It is sufficient that, having received the Court's judgment in *Johnson I*, the Agency was reasonable in relying on that judgment when it was adjudicating future appeals.

The reasons given further included practical considerations, to wit, the fact that the VA rating schedule assigns disability evaluations based on the impact of individual disabilities, not collective disabilities; and, thus, "it is unworkable for VA to compare a Veteran's disabilities collectively to the criteria of an individual disability in the rating schedule to determine whether the rating schedule is adequate and extraschedular consideration is warranted." *Id.* at 10. Additionally, practical considerations included that § 3.321(b)(3) states that effective dates for extraschedular evaluations will be determined in accordance with 38 C.F.R. § 3.400, and § 3.400 describes how to determine an effective date for an individual claim only, not collective claims. *Id.* at 6. Moreover, the Secretary represented, and this Court has no cause to doubt, that "a sampling of Board decisions demonstrates that the Board generally follows VA's long-standing interpretation" of the regulation to require individualized extraschedular consideration. *Id.* at 8; *see Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399-400 (2008) (judicial deference was due to the Equal Employment Opportunity Commission's (EEOC's) "interpretive statement, embodied in the compliance manual and memoranda, [which] has been binding on EEOC staff for at least five years" even though, "as the Government concedes, the agency's implementation of this policy has been uneven").[13]

### 4. This Court Upholds the Secretary's Approach

Five out of eight judges on this Court deemed the Secretary's interpretation reasonable. *See Johnson I*, 26 Vet.App. at 244 (noting, inter alia, that the Secretary was interpreting his own regulation and that "the VA disability rating schedule is designed to consider the disabling effect of disabilities separately"). Although the majority points out that this Court's agreement with the Secretary's interpretation does not "resolve the substantial justification inquiry," *ante* at 9 (citing *Patrick*, 668 F.3d at 1332), that fact is both obvious and a red herring. Of course this Court's merits determination does not "resolve" the question of whether the Government was substantially justified; however, neither does the Federal Circuit's merits determination. Neither court adjudicated the issue of whether the Government's position was substantially justified, and neither court was asked. *See*

---

[13] Although the majority contends that the Secretary's acknowledgment that some Board decisions might have mistakenly made collective extraschedular referral decisions over the years shows that he had "weak support for his assertion that he had long applied the erroneous regulatory interpretation," *ante* at 13-14, the majority fails to explain how lack of perfection in applying the Secretary's interpretation in hundreds of Board decisions over the years demonstrates that the Secretary's policy was not longstanding. *See Fed. Express Corp.*, 552 U.S. at 400 (noting that "[s]ome degree of inconsistent treatment is unavoidable when the agency processes over 175,000 inquiries a year").

*Felton*, 7 Vet.App. at 286 ("Indeed, our underlying decision on the merits addressed an altogether different question: whether the regulation at issue was valid rather than whether the steps that led to VA's promulgation of the regulation (i.e., the prelitigation conduct) was substantially justified."); *see also Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1335 (Fed. Cir. 2004) (only "issues that were actually decided, . . . in the earlier litigation" represent the law of the case); *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997) ("It is axiomatic that the language in [any case] must be read in light of the facts and issues that were before the court when the language was written."); *Young v. Shinseki*, 25 Vet.App. 201, 204 (2012) (en banc) (issue preclusion requires that (1) the issues previously adjudicated were "identical to" those before the current tribunal; (2) the issues were "actually litigated" in the prior proceeding; (3) the prior tribunal's resolution of those issues was "necessary to the resulting judgment"; and (4) the litigant was fully represented in the prior proceeding).

Nor would it resolve the reasonableness inquiry if the Supreme Court unanimously reversed the Federal Circuit's merits determination tomorrow. The Supreme Court binds the Federal Circuit as to merits determinations actually reached, just as the Federal Circuit binds this Court, *see Toro*, 383 F.3d at 1335; however, that hierarchy of authority does not mean that disagreements with merits determinations are unreasonable. As Justice Jackson explained:

> Whenever decisions of one court are reviewed by another, a percentage of them are reversed. That reflects a difference in outlook normally found between personnel comprising different courts. However, reversal by a higher court is not proof that justice is thereby better done. There is no doubt that if there were a super-Supreme Court, a substantial portion of our reversals of state courts would also be reversed. We are not final because we are infallible, but we are infallible only because we are final.

*Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring). Nor does it mean that failure to foresee a different result on appeal is unreasonable. *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312 (1994) ("The essence of judicial decisionmaking–applying general rules to particular situations–necessarily involves some peril to individual expectations because it is often difficult to predict the precise application of a general rule until it has been distilled in the crucible of litigation.").

However, the fact that this Court agreed with the Secretary's interpretation of § 3.321(b)(1), and thus that the Board's conduct in Mr. Butts's case comported, quite perfectly, with then-existing precedent, is an "undeniably important factor," *Patrick*, 668 F.3d at 1332, which weighs in favor of substantial justification in this case. It also shows that the case presented "a dispute over which reasonable minds could differ." *Norris*, 695 F.3d at 1235; *League of Women Voters of California v. F.C.C.*, 798 F.2d 1255, 1260 (9th Cir. 1986) (denying EAJA fees because, inter alia, "[t]he constitutionality of the amended statute is a question upon which reasonable minds could differ, as evidenced by the five-four division by the Supreme Court"); *see also Gonzales*, 408 F.3d at 621 (noting differing views of Government's position taken by judges at previous phases and concluding, "[t]hus, 'reasonable minds' could and *did* differ about" the Government's position). Moreover, the en banc approval of the Secretary's position by this Court, unique amongst courts as the only court established to hear exclusively appeals from the Board of Veterans' Appeals, is arguably a stronger factor in the Secretary's favor than judicial approval generally. *See* 38 U.S.C. § 7252(a) (giving this Court exclusive jurisdiction over appeals from the Board); *Shinseki v. Sanders*, 129 S. Ct. 1696, 1707 (2009) (noting this Court's exclusive jurisdiction over veterans benefits cases and its special expertise in veterans benefits law); *Tobler*, 2 Vet.App. at 11-12 ("Congress has made the United States Court of Veterans Appeals the national 'statutory court of review' of decisions on veterans' benefits by the Secretary and the Department of Veterans Affairs." (citation omitted)); *cf. Underwood*, 487 U.S. at 569 (exploring aspects of court approval or disapproval that may bear on weight to be given to either, including that "a string a losses can be indicative; and even more so a string of successes").

*5. Whether the Only Reasonable Response to* Johnson I *Was To Seek a Stay*

On the central question in today's proceedings of whether the agency's administrative position was substantially justified on July 31, 2014, the Agency had all the above information supportive of a decision to continue applying its longstanding interpretation of § 3.321(b)(1), and the Agency did not have the benefit of the Federal Circuit's *Johnson II* decision. *See Smith*, 16 Vet.App. at 76. Additionally, even if, as the majority contends, "the majority [in *Johnson I*] simply erred when it deferred to the Secretary's interpretation," *see ante* at 9, *Johnson I* was "the law of the jurisdiction" at the time of the Board's July 2014 decision in the present case. *Tobler*, 2 Vet.App. at 11; *see*

*Ribaudo*, 20 Vet.App. at 560; *Ramsey*, 20 Vet.App. at 38. Put simply, measured "against the case law that was prevailing at the time the government adopted its position," the Board's position was correct. *Bowey*, 218 F.3d at 1377. Although the Secretary could have sought a stay pending the Federal Circuit's resolution of the *Johnson* appeal, it is not clear why a reasonable Secretary would have done so in light of this Court's *approval* of his interpretation. *Cf. Ribaudo v. Nicholson*, 21 Vet.App. 137, 142 (2007) (noting that "a decision of this Court may invalidate the procedures used by the Secretary in a manner that would require a serious restructuring of the VA workforce" and granting the Secretary's motion to stay in part to avoid "the likely creation of administrative disruption in an already generally overburdened system"); *Tobler*, 2 Vet.App. at 12 ("'[W]e do not expect the Board or any other litigant to rejoice in all the opinions of this Court. *When it disagrees* in a particular case . . . it would be reasonable for the Board to stay its proceedings.'" (emphasis added) (quoting *Ithaca Coll. v. NLRB*, 623 F.2d 224, 228 (2d Cir. 1980))).

Moreover, EAJA does not require the most correct, forward-thinking, prescient agency action possible. *See Underwood*, 487 U.S. at 565 (holding that "substantially justified" does not mean "justified to a high degree"). It requires only that the Government's action was such that "a reasonable person could think it correct." *Id.* Accordingly, even if I can imagine a reasonable Secretary who would have thought it prudent, following a Court's confirming what he already thought about his own regulation, to seek a stay of all Board decisions involving that regulation, furthering the wait time for all veterans whose appeals involving that regulation were then pending, *see Ramsey*, 20 Vet.App. at 38 ("Such a stay does not affect solely the Secretary's own internal matters . . . . For all cases stayed at the Board pending a decision by the Federal Circuit in the controlling case, the stay denies or delays the implementation of the Court's controlling decision."), it does not matter. For I can certainly imagine a reasonable Secretary who would have chosen not to seek such a stay, and this is all that EAJA requires. *See Underwood*, 487 U.S. at 565; *see also Cody*, 631 F.3d at 144 (noting that in some cases opposing legal positions may both be reasonable).

Otherwise stated, given the above backdrop for the Government's administrative position, I find it legally untenable to hold, as the majority does, that, after the Agency had expended significant time, energy, and resources to advance a litigation position on an interpretation of the Agency's own long-standing regulation, after it had secured an en banc victory on that position in

37

the Court whose congressionally mandated purpose is to adjudicate disputes involving that Agency, and after that Court had admonished that Agency that its holdings bind the Board and that stays may be appropriate where the Government disagrees with a holding but must be sought by motion to the Court, the *only reasonable action* for the Agency to take would have been to move for a stay. Needless to say, given the factors identified above, I disagree with the majority's assessment that the Secretary has "one factor weighing in favor of finding substantial justification at the administrative stage." *Ante* at 15.

## C. The Majority's Analysis

### 1. The Majority's Focus on the Johnson II *Merits Decision*

As for factors weighing against substantial justification, the majority gives lip service to the totality of the circumstances test but in reality cedes its analytic responsibility to the Federal Circuit's merits determination in *Johnson II*. That merits determination was that the Secretary's interpretation was contrary to the regulation's language and public policy. 762 F.3d at 1366. Although the majority cites separate "factors" that favor its negative substantial justification determination, *see ante* at 15, all of these factors are variations on the majority's theme that the *Johnson II* merits determination shows in hindsight that Mr. Butts's Board decision was not substantially justified. *Cf. Gonzales*, 408 F.3d at 620 (impermissible to rely on hindsight "rather than an assessment of the reasonableness of the government's position *at the time* [*that position was taken*]"); *Taucher*, 396 F.3d at 1173 (same). Two of those factors are the merits decision's plain language conclusion and that decision's policy observation.[14] *See Johnson II*, 762 F.3d at 1366.

One of the factors, that *Johnson I* was not unanimous but was a "mixed decision," *ante* at 15, is only relevant to the extent that the majority believes that the Government should have sought a

---

[14] As the Federal Circuit appeared to recognize, its policy observation was dicta. *See Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) ("If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning."); *Cacciola v. Gibson*, 27 Vet.App. 45, 52 (2014) ("If the meaning of the regulation is clear from its language, that is the end of the matter." (citation and internal quotation marks omitted)); *see also Johnson II*, 762 F.3d at 1366 ("We further *note* that, while policy arguments would not, in any case, persuade us to depart from the plain language of the regulation . . . ." (emphasis added)). However, because, as stated above, the substantial justification inquiry "does not exclude any valid issue from consideration," *White*, 412 F.3d at 1317, I do not fault the majority for including this observation as a relevant part of the Federal Circuit's merits determination. I note merely that, although we are bound by the Federal Circuit's plain language interpretation of the regulation, we are not bound by its dicta on public policy. *See Toro*, 383 F.3d at 1335.

stay. This factor is intertwined with one of the remaining "factors," which is that the Government "had the option" of staying the case. *Id.* As stated above, however, the fact that this Court's decision was five votes to three in the government's favor showed, at the time of Mr. Butts's Board decision, that (1) this Court, sitting en banc, agreed with the Secretary's analysis and (2) the case presented an issue on which reasonable minds could differ. *See Gonzales*, 408 F.3d at 620 (Ninth Circuit split decision was among factors showing that "'reasonable minds could differ' over the credibility of this novel argument"); *League of Women Voters*, 798 F.2d at 1260 (five to four vote in the Supreme Court showed that the issue was one on which reasonable minds could differ). Moreover, the fact that the Government "had the option" of staying the case, as explained above, is immaterial to the question of whether the only reasonable option the Secretary had was to stay the case.

*2. The Majority's Statutory Interpretation*

Although not listed among its numeric "factors," the majority obliquely refers to an issue not briefed by any party in this case, the language of 38 U.S.C. § 1155–the statute that, along with 38 U.S.C. § 501(a), provides the enabling authority for 38 C.F.R. § 3.321. The majority points out that the Federal Circuit observed that the language of § 3.321(b)(1) is "consistent with the language of [section] 1155." *Johnson II*, 762 F.3d at 1365. Additionally, the majority reasons that section 1155 "permit[s] extraschedular evaluations based on a veteran's combined injuries" and "is not silent" on the issue of collective versus individual extraschedular evaluations. *Ante* at 12. Further, the majority concludes that these facts make this case distinguishable from *Felton*, citing *Felton*'s language indicating that the Secretary's mistake in enacting a regulation was more reasonable "[g]iven the statutory silence on the particular matter." *Id.* (citing *Felton*, 7 Vet.App. at 24). The majority's vague implication that the Secretary's interpretation of § 3.321(b)(1) is inconsistent with, unreasonable in light of, or implicated in any way by section 1155 is misguided.

Section 1155 does not require any type of extraschedular evaluation, let alone require an extraschedular evaluation based on the collective impact of disabilities. The statute requires, in the most general of terms, that the Government "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries." 38 U.S.C. § 1155 (emphasis added). This the Secretary has done, by creating a rating schedule for evaluating individual disabilities and by choosing to provide a combined ratings table. *See* 38 C.F.R. § 4.25(b) (2015)

39

("Except as otherwise provided in this schedule, the disabilities arising from a single disease entity . . . are to be rated separately as are all other disabling conditions, if any. All disabilities are then to be combined as described in paragraph (a) of this section."). As the Federal Circuit noted, § 3.321(b)(1) fulfills a "gap-filling" function, "to accord justice" for veterans whose schedular ratings–the ones contemplated by section 1155–are, in the Secretary's determination, inadequate. *Johnson II*, 762 F.3d at 1365. Section 1155 does not mention extraschedular consideration or contemplate it, but rather speaks to what is required for ratings under the schedule; extraschedular ratings are, by definition, outside the schedule. More directly applicable to § 3.321(b)(1) is section 501(a), which gives the Secretary "the authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws."

That the Federal Circuit found Mr. Johnson's interpretation of that "gap-filling" regulation to be "consistent with" section 1155 is a far cry from holding that the Secretary's interpretation of the regulation was unreasonable. Even if the Federal Circuit's aside regarding section 1155 could be taken as a wholehearted endorsement of Mr. Johnson's reading of the *statute* as "reasonable" within the meaning of EAJA–that is, "justified to a degree that could satisfy a reasonable person," *Underwood*, 487 U.S. at 565–it does not follow that the Secretary's alternate interpretation was not also "justified to a degree that could satisfy a reasonable person," *id.* To hold otherwise would be to place an almost insurmountable burden on the Government: not only would it be required to show that its own position was reasonable, it would also be required to show that its opponent's position was unreasonable, even though its opponent prevailed. Such reasoning not only grossly overstates the Government's burden in the EAJA context, but it also overlooks the fact that, in many cases, *both* parties' arguments may be reasonable, particularly where both parties are grappling with difficult issues of first impression. *See Cody*, 631 F.3d at 144 ("[B]oth the [EAJA] order and the record reflect that the district court considered the arguments of both parties to be reasonable. We agree. In this case of first impression, the Government made reasonable arguments based on statutory interpretation and analogous cases."). Invoking section 1155 does not save the majority's hindsight-based analysis about the Secretary's interpretation of his regulation from being a hindsight-based analysis.

40

*3. Using the Plain Language Canon To Deem a Position Unreasonable*

While mindful that the exercise of determining substantial justification has been described as "a judgment call" that is "quintessentially discretionary in nature," *Chiu v. United States*, 948 F.2d 711, 715 and n.4 (Fed. Cir. 1991), the majority ironically makes the one error that will damn any substantial justification analysis: to focus on one factor, such as the merits determination, without considering all the pertinent factors surrounding the Government's conduct. *See Patrick*, 668 F.3d at 1332 ("Here, although the Veterans Court acknowledged this 'totality of the circumstances' standard, it improperly focused on only one factor–the fact that the court itself had previously upheld the VA's erroneous interpretation . . . ."); *Essex*, 757 F.2d at 253 (rejecting prevailing party's argument that the Government is per se not substantially justified where it acts in contravention of a regulation because "[t]he reasonableness of the government's litigation position is determined by the totality of the circumstances, and we eschew any single-factor approach"); *Felton*, 7 Vet.App. at 286 ("[W]e have gone to great lengths to make clear that the resolution of EAJA issues depends on many factors."); *Stillwell*, 6 Vet.App. at 302 (identifying the "merits" as one factor out of many for consideration).

The majority states that the fact that the Federal Circuit held that the Secretary's reading in *Johnson* "contradicted the plain language of the regulation" weighs "heavily against a finding of substantial justification" and makes it "difficult to establish substantial justification." *Ante* at 10 (citing *Patrick*, 668 F.3d at 1331). First, as a matter of logic and common sense, it does not follow that, merely because the language of a regulation is held to be "plain," the analysis used to arrive at that result is plain, or straightforward, or the only reasonable result that the court could have reached, or that parties who failed to foresee that result were "plainly" wrong. Plain language, otherwise stated as language unadorned by other methods of determining meaning, is nothing more or less than a canon of statutory and regulatory construction and is not a trump card in the substantial justification analysis. *See Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449-50 (D.C. Cir. 1994) ("'Plain meaning' analysis is merely a tool of construction; it does not perform a talismanic function in statutory interpretation."); *see also Watt v. Alaska*, 451 U.S. 259, 266 (1981) ("[T]he plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'" (quoting *Boston Sand Co. v. United States*, 278

41

U.S. 41, 48 (1928))). Our colleagues in the majority surely must realize that reasonable minds can and do differ on whether the meaning of a regulation can be divined from its plain meaning, just as they can differ on any other legal question.

The proof that a court's plain language conclusion does not trump other factors is in the pudding. This Court and others have held numerous times and without difficulty that, even though the Government's interpretation was rejected by a court using the plain language canon, that position was substantially justified because the plain language question was close, or because the law in question was complex, or because the case presented an issue of first impression, or, as in this case, because a combination of those factors was present. *See White*, 412 F.3d at 1316 (Secretary's position was substantially justified even where Board applied a regulation found to be "facially invalid on the basis of contradicting the overarching legislation" because the case was "a case of first impression" where there had been "no prior adverse reaction" to the regulation); *Bates*, 20 Vet.App. at 192 (although Federal Circuit held that Secretary's interpretation of 38 U.S.C. § 511(a) was contrary to statute's "plain language" and had "no basis in the statutory language, legislative history, or case authority,"[15] Secretary's position was substantially justified because the issue was "a matter of first impression" and the Federal Circuit's analysis "could not have been easily divined from existing caselaw"); *Ozer*, 16 Vet.App. at 478 (Secretary's enactment of regulation that "contravened the plain language of the statute and was thus invalid" was substantially justified where the Secretary's conduct represented "a good faith effort to interpret an evolving area of the law," did not conflict with then-existing precedent, and "was not questioned" until proceedings before the Court in *Felton*, when it was invalidated (quoting *Felton*, 7 Vet.App. at 285)); *see also Saysana*, 614 F.3d at 6 (Government was wrong to contend that 8 U.S.C. § 1226(c) "was ambiguous," such that deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), was appropriate; however, Government's position was "substantially justified" because case presented a novel issue on which there was little precedent); *Pottgieser*, 906 F.2d at 1324 (government's reading of Social Security statute contrary to its plain language was substantially justified because "the Secretary's litigation position had a reasonable basis and the Social Security

_____

[15] *Bates v. Nicholson*, 398 F.3d 1355, 1361 (Fed. Cir. 2005).

statutes [are] complex"); *Yoffe*, 775 F.2d at 450 (although Government misread U.S. Treasury regulations to allow for the private, rather than public, sale of abandoned merchandise, reviewing court did "not think that the government should be found to have acted without substantial justification because it did not foresee how the court of appeals would interpret the regulations"); *S. Or. Citizens Against Toxic Sprays, Inc. v. Watt*, 556 F. Supp. 155, 157 (D. Ore. 1983) (Government was substantially justified where contravened regulation was "a convoluted regulation, difficult to interpret" and there was "little case law to guide the Government"), *aff'd sub nom. S. Or. Citizens Against Toxic Sprays v. Clark*, 720 F.2d 1475, 1481 (9th Cir. 1983) (affirming denial of EAJA fees because, although the appeals court found that the regulation was not "difficult to interpret" but was rather "straightforward and means what it says, . . . [t]he analysis required by the regulation is exceptional . . . [and] the only reported case interpreting the . . . regulation before this decision supported the government's position").[16]

Similarly, here, the regulation at issue is complex; the question of whether a plain language analysis would suffice to interpret the regulation was a close one, especially given that 5 of 11 Judges to explore the issue determined that the regulation was not clear;[17] no court had ever interpreted the

---

[16] The majority attempts to distinguish the particular facts of each of the above-cited cases from the present case, contending that they each contain particular factors that make each case unique. *Ante* at 14 n.6. True, the cases are all, to a certain extent, unique, because the statutes and the regulations at issue in the cases are different from that at issue in the present case. The majority misses that these cases are cited to show that this case possesses factors in common with *each* of these cases, and to illustrate that, contrary to the majority's central assumption, plain language is not the end of the substantial justification analysis, but the beginning. As in *Bates*, the Federal Circuit's result here was "not easy to predict"; as in *S. Or. Citizens*, even if one could consider § 3.321(b)(1) "straightforward," the analysis required of that regulation was complex; as in *Saysana*, *Yoffe*, and *White*, the issue of whether § 3.321(b)(1) required collective evaluations was novel–it had never before been directly raised. The majority also confusingly states that the cases are cited "for the proposition that an agency can be substantially justified even when it is wrong." *Ante* at 14 n.6. That proposition needs only one citation: *Underwood*, 487 U.S. at 566 n.2 ("[A] position can be justified even though it is not correct."). The above cases are cited, instead, for the proposition that the Government can be–and often is–substantially justified even where its interpretation runs contrary to the plain language of a statute or a regulation. I also note that the majority seems to have misread *Pottgieser*. *Compare ante at* 14 n.6 (stating that *Pottgieser* did not involve a plain meaning interpretation), *with Pottgieser*, 906 F.2d at 1322-23 (holding, contrary to the Agency's reading, "under the plain language of the statute, costs of service are different than premiums, and premiums are not included in the definition of 'medical assistance'" and also holding that "nothing in the legislative history" supported the Government's reading; further holding that, "[w]e do not find the statute ambiguous or Congressional intent unclear, but we nevertheless reject the Secretary's argument" that the Court should defer to his reading of the statute; and further holding that "the Secretary's position in his brief conflicts with regulations promulgated by his department").

[17] I was one of three Veterans Court Judges who found the regulation's language clear, joining Judge Davis in dissenting in *Johnson I*. I find nothing inconsistent or remarkable about viewing the regulatory language as clear and unambiguous, as I expressed in *Johnson I*, but viewing the Secretary's adopting and arguing a position that the language

regulation in a manner contrary to the way the Secretary interpreted it; and the Secretary's interpretation presented a reasonable attempt to resolve a difficult question. *See, e.g.*, *White*, 412 F.3d at 1316. That the Federal Circuit has now provided an authoritative interpretation of that regulation does not change the fact that, on July 31, 2014, the Board could be understood if it found the regulation both "complex" and "exceptional." *See Stillwell*, 6 Vet.App. at 303; *see also Meinhold*, 123 F.3d at 1278. Additionally, at the time the Agency acted, this Court had held en banc that the regulation was ambiguous and that the Secretary's interpretation was reasonable, a determination that the Board was without authority to second-guess. *See Tobler*, 2 Vet.App. at 11. The Federal Circuit's citation to an additional reason–public policy–for disagreeing with the Secretary's interpretation does not rob this Court of the ability to hold that interpretation reasonable, for all of the reasons listed above, when analyzing the Agency position for EAJA purposes, and without the benefit of hindsight, nor does it absolve this Court of the responsibility to make an independent determination of reasonableness. *Compare Bates*, 398 F.3d at 1361 (Federal Circuit holds that the Secretary's interpretation had "no basis in the statutory language, legislative history, or case authority"), *with Bates*, 20 Vet.App. at 192 (Secretary's interpretation was substantially justified); *see also Gonzales*, 408 F.3d at 620 (merely stating that the merits court "soundly rejected the government's arguments" does not establish a lack of substantial justification).

### 4. Misapplied Dicta from Patrick *Does Not Rescue the Majority's Analysis*

Dicta from *Patrick*, which the majority quotes as if it were binding precedent, does not change the analysis. The holding of *Patrick*, as noted above, was that this Court had applied an erroneous legal test, because it "improperly focused on only one factor." 668 F.3d at 1332. The observation cited by the majority, regarding plain language and legislative history of statutes, was not necessary to the determination that the case must be remanded for a totality-of-the-circumstances analysis and thus is not binding on this Court. *See McDaniel v. Sanchez*, 452 U.S. 130, 141 (1981) ("[D]ictum unnecessary to the decision in [a] case . . . [is] not controlling in this case[.]"). The

---

was ambiguous–and his interpretation thereof due deference–as reasonable, all things considered, and an issue worthy of the lengthy briefing and opinion-drafting process that characterized the *Johnson I* decision. *See Saysana*, 614 F.3d at 4 (although Government was wrong about whether statute was ambiguous, "the question of whether § 1226(c) was ambiguous, and therefore whether courts had to defer to a reasonable administrative interpretation of the statute, was one of first impression," and, "as such, it was appropriate for the [G]overnment to seek specific instruction from the court on this issue").

Federal Circuit did not hold that the Government's interpretation lacked substantial justification because it interpreted a statute contrary to its plain meaning and legislative history. Indeed, the Federal Circuit has determined that it cannot make such a holding. *See Bowey*, 218 F.3d at 1378 ("[D]etermining substantial justification requires the application of law to facts. Since such inquiries are specifically excluded from our jurisdictional grant, *see* 38 U.S.C. § 7292(d)(2), we must remand this case to allow the Court of Appeals for Veterans Claims to decide whether the government's position was, in fact, substantially justified at the time it was adopted, based on the record at the time.").

After mistaking *Patrick*'s dicta for a holding, the majority misreads the dicta. The language cited by the majority reads: "Where . . . the government interprets a *statute* in a manner that is contrary to its plain language *and unsupported by its legislative history*, it will prove difficult to establish substantial justification." 668 F.3d at 1330-31 (emphasis added). In other words, where the situation is similar to that in *Bates*, involving an Agency's misconstruing *Congress*'s words and misreading *congressional* history, it will prove "difficult"–though, clearly, not impossible, *see Bates*, 20 Vet.App. at 192–to establish that the Agency's misconstruction was reasonable. *See Patrick*, 668 F.3d at 1333 ("[I]t would be hard to imagine how it could be held that one had been substantially justified in defying the will of Congress by interpreting a statute in a manner contrary to its plain language and legislative history." (citations and internal quotation marks omitted)). The Federal Circuit said nothing in *Patrick*, even in passing, about interpretations that contradict statutes but do not contradict legislative history. And here there has been no holding that the Government's interpretation of § 3.321(b)(1) was contrary to legislative history.[18]

Additionally, unlike the Secretary in *Patrick*, the Secretary here was not interpreting a statute; he was interpreting his own regulation (and, as stated above, there is no support for the majority's suggestion that the Secretary's interpretation was inconsistent with or unreasonable in light of any statute). Although the canons of regulatory construction are the same as those of statutory

---

[18] The Federal Circuit did not address legislative history, and I note that the issue in the present case is a murky one. *See Johnson I*, 26 Vet.App. at 257 (Kasold, C.J., dissenting) (noting that the language of the original 1930 provision "is unclear–ambiguous–as to whether an extraschedular disability rating could be predicated on a multiple-disability basis, because the rule simply indicates that such a rating would be based on the reduction in average earning capacity compared to the average worker 'suffering a similar disability'").

45

construction, where the question is one of prospective reasonableness, as noted above, an Agency is on much more stable ground in asserting that its construction of its own words is "reasonable" than in stating that its construction of Congress's words is reasonable. *See Decker*, 133 S. Ct. at 1337; *Skidmore*, 323 U.S. at 140. A reasonable Secretary might well make a different calculation when faced with his own regulatory language that he believes to be ambiguous than when faced with statutory language that he believes possesses the same ambiguity. *See Felton*, 7 Vet.App. at 284; *see also Saysana*, 614 F.3d at 4. Accordingly, whatever one thinks of the accuracy of the Federal Circuit's prediction in *Patrick*, which is that, when two specific factors are against the Secretary's interpretation, that interpretation will have a steep hill to climb before being deemed substantially justified, neither of those factors are present in this case.

### III. CONCLUSION

For the reasons stated above, I believe that the balance of factors in the totality-of-the-circumstances analysis weighs in the Secretary's favor on the question of whether the Secretary's position was so unreasonable in fact and law that he should pay the appellant's legal fees. The Secretary's arguments on a novel question about his regulation to this Court in *Johnson I*, which included practical considerations and his longstanding interpretation, this Court's en banc decision in his favor citing those same arguments, his decision not to seek a stay for all Board decisions involving § 3.321(b)(1) following that favorable en banc decision, and his decision to agree to a prompt remand of Mr. Butts's Board decision following *Johnson II*, made both his administrative and litigation positions in this case "justified to a degree that could satisfy a reasonable person." *Underwood*, 487 U.S. at 565. I dissent from the majority's attempt to short-circuit the totality-of-the-circumstances analysis by citing to dicta from the Federal Circuit about what factors might make a substantial justification analysis more or less difficult. Additionally, I dissent from the majority's reliance on the Federal Circuit's merits determination in *Johnson II*, even though that merits determination did not purport to address substantial justification and even though the Secretary did not have that determination as a pertinent fact before him when deciding whether to move for a stay in Mr. Butts's case. Finally, I join Judge Lance in having grave doubts as to the impossible position in which this ruling, if it stands, places the Secretary in future cases, as he makes the Hobson's

Choice of whether to follow this Court's binding authority, as we have instructed him time and time again that he must, or to gainsay that authority in a misguided attempt to avoid paying attorney fees and expenses.

MOORMAN, *Judge*, dissenting:  It is a peculiar logic that results in the issuance of a majority opinion on behalf of "the United States Court of Appeals for Veterans Claims" and then, in effect, declares that our decisions are no longer controlling on the Secretary or the Board.  Such muddled thinking would render us nothing more than an advisory body with no authority to bind either VA or the Board.  In the eyes of the majority, we ceased to be a "court of appeals" as soon as we rendered our precedential decision in *Johnson v. Shinseki* (*Johnson I*), 26 Vet.App. 237 (2013) (en banc), for, by the majority's reasoning, a wise Secretary and Board would not have followed our decision unless or until it was declared correct by the Federal Circuit.  Thus, today's majority holding, in effect, eviscerates this Court's authority to bind the Secretary.

The majority has concluded that the appellant was the prevailing party in this case and that the VA's position at the administrative stage was not substantially justified.  My dissenting colleagues have explained why the Secretary was substantially justified at the administrative stage.  And, I add a brief statement to what they have clearly and logically stated.  I emphasize only that when *Butts* was decided by the Board, recognizing this Court's status as the single Federal court having jurisdiction to hear appeals from final VA decisions, *Johnson I* was the law of the land.  Yet, the majority concludes that the Board was not substantially justified in applying the regulation at issue in a manner entirely consistent with *Johnson I*.  When our superior appellate court later found that the plain language of the regulation was at odds with the Secretary's argued reading of his regulation, VA promptly sought to remand *Butts* to the Board for application of 38 C.F.R. § 3.321(b)(1) as read by the Federal Circuit.  This is clearly not the factual and judicial context contemplated by the EAJA for finding as not substantially justified the Government's positions at either the administrative or litigation stage of the proceedings.

But, more than that, the Secretary here challenges the assertion that Mr. Butts was the prevailing party.  "Prevailing party status requires either (1) the ultimate receipt of a benefit that was sought in bringing the litigation, i.e., the award of a benefit, or (2) a court remand predicated upon

administrative error." *Zuberi v. Nicholson*, 19 Vet.App. 541, 544 (2006) (citing *Sumner v. Principi*, 15 Vet.App. 256, 264 (2001) (en banc), *aff'd sub nom. Vaughn v. Principi*, 336 F.3d 1351 (Fed. Cir. 2003)). The majority summarily disposes of this argument by saying that the language in the JMPR expressly concedes error because the Secretary agreed that the Board decision "does not comply with the requirements of 38 C.F.R. § 3.321." That one sentence, however, must not be read in isolation from the sentences immediately following it in the JMPR. Those sentences discuss the holding by the Federal Circuit in *Johnson II* and the parties' agreement that "[t]herefore, . . . remand is warranted for the Board to consider and apply the Federal Circuit's holding in *Johnson*." Mar. 9, 2015, Joint Motion for Partial Remand at 2; *cf. Air-Sea Forwarders, Inc. v. United States*, 166 F.3d 1170, 1172 (Fed. Cir.1999) ("[A]n agreement is not to be read in a way that places its provisions in conflict, when it is reasonable to read the provisions in harmony. . . . [T]he provisions must be read together in order to implement the substance and purpose of the entire agreement."). This was clearly meant to be a statement of the law as it existed at the time the JMPR was agreed upon. And, the controlling law on that date was the Federal Circuit's decision in *Johnson II*. I would hold that Mr. Butts was not a prevailing party in this case.

Mere agreement by the Secretary that *Johnson II* had changed the permissible interpretation of § 3.321(b)(1) after the Board's decision does not constitute an admission of administrative error (implicitly or explicitly) by the Secretary. The JMPR did not state that the Board misapplied the law at the time of the Board's decision. The appellant received merely "the opportunity for further adjudication"–to present to the Board additional arguments concerning the scope of § 3.321(b)(1), in light of new caselaw, as applied to the facts in his case. *Zuberi*, 19 Vet.App. at 546 (quoting *Akers v. Nicholson*, 409 F.3d 1356, 1359 (Fed. Cir. 2005)); *Vaughn*, 336 F.3d at 1355-56; *Sumner*, 15 Vet.App. at 264; *see also Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598 (2001); *Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371 (Fed. Cir. 2002); *cf. Gordon v. Principi*, 17 Vet.App. 221, 224 (2003) (holding that the appellant was not a prevailing party where the Court remanded a waiver request to the Board for it to consider, in the first instance, the argument regarding the applicability of a particular regulation to her waiver request and where consideration of the regulation might require factual findings regarding whether the appellant met the requirements of that regulation). Prevailing-party status, however, requires

more than a remand that calls for further Agency proceedings; it requires that the remand be based on Agency error. *See Dover v. McDonald*, __ F.3d __, __, No. 2014-7124, 2016 WL 1376361, at *3 (Fed. Cir. Apr. 7, 2016).

The remand here was not based on Agency error; rather, it was based on an agreement by the parties that *Johnson II* was an intervening change in the interpretation of VA's regulation § 3.321(b)(1) and that the Board should consider the new interpretation on remand. Moreover, the remand did not provide Mr. Butts with "the ultimate receipt of a benefit that was sought in bringing the litigation, i.e., the award of a benefit." *Zuberi*, 19 Vet.App. at 544.